MARY E. CANTLEY ET AL V. GULF PRODUCTION COMPANY ET AL.

No. 7457. Decided October 23, 1940.
(143 S. W., 2d Series, 912.)

*Mayfield, Grisham & Grisham* and *J. A. Lantz,* of Tyler, and *Wynne & Wynne,* of Longview, for plaintiffs in error.

On the proposition that the deed under which they claimed vested title in the petitioners to the land which they claimed as the heirs of their father, plaintiffs cite Vogel v. Allen, 118 Texas 196, 13 S. W. (2d) 340; Reynolds v. McMann Oil & Gas Co., 11 S. W. (2d) 778; 14 Tex. Jur. 1028.

*John E. Green, Jr., John Broughton, B. C. Clark* and *Robt. F. Clark,* all of Houston, for defendants in error.

The description of Lot No. 2 not referring to the road way at all indicates very clearly that the partitioners intended to take it entirely from Lot No. 5. Haberman v. Baker, 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611; Snoddy v. Bolen, 122 Mo. 479, 25 S. W. 933, 24 L. R. A. 507; 9 C. J. 203.

MR. JUSTICE SHARP delivered the opinion of the Court.

Mary E. Cantley, Polly Timmes, and Alberta Tibbs, being the children of John Douglass, deceased, joined by their husbands, filed a trespass to try title suit for a 30-foot strip of land, designated as Lot No. 5 in a partition of the Tucker estate, set aside in the decree of partition for a road, which was never opened. Plaintiffs in the trial court specially pleaded title by the ten years statute of limitation; which was sustained by the finding of the jury. The Gulf Production Company, as the alleged leasehold owner, and various royalty owners, the fee owner, and the heirs of Tucker were made defendants. Ben Laird, the owner of Lot No. 2, which adjoins the land in controversy, intervened. The trial court entered judgment denying the plaintiff and the intervenor any recovery. The intervenor did not appeal from the judgment of the trial court. The Court of Civil Appeals at Texarkana affirmed the judgment of the trial court. 118 S. W. (2d) 448.

In 1910 a 668-acre tract of land was partitioned in the District Court of Gregg County among the heirs of M. E. Tucker. The report of the Commissioners, containing field notes for each subdivision, and accompanied by a partition map prepared by the county surveyor, was duly recorded. A substantial reproduction of the map relating to the land in controversy is inserted herein.

We quote from the opinion of the Court of Civil Appeals the following statement of facts:

"It is clear from other recitals in the decree and from this map as filed that a narrow strip of land was set apart as a 'road reservation' between Lot No. 2 to the east and Lots Nos. 1, 4 and 5 to the west. This decree describes Lot No. 5 to-wit:

" 'Out of the W. P. Chism survey, beginning 30 feet West of the N. W. corner of Lot No. 2, a stake in Rabbitt Creek; Thence S. 25 E. keeping 30 feet from Lot No. 2 for a road reservation 750 varas to the N. E. corner of Lot No. 4; Thence S. 81 W. 800 vrs. to Rabbit Creek; Thence down said creek to the place of beginning, containing 74 acres.'

"The entire tract was in the woods at the time of the partition. After John Douglass, the father of these appellants, purchased Lot No. 5 and Ben Laird acquired Lot No. 2, these lands were fenced and placed in cultivation. The fence of Douglass erected about 1913 included the 30-foot strip in controversy which he cultivated, and his possession of it ripened into a ten-year limitation title. A road was never established upon

this strip. Douglass opened up a road on this Lot No. 5 which ran west of the strip in controversy and which was used in lieu of the road designated in the partition decree. After the discovery of oil in that community an improved highway was constructed through Lot No. 5 west of the strip in controversy.

"The description of Lot No. 5 in the deed wherein John Doug-

lass acquired title and the deed wherein Douglass and the children of his deceased wife conveyed off in 1929, under which last conveyance appellees claim title to this 30-foot strip are the same, and each reads as follows:

" 'A part of the W. P. Chism sur. and known as tract No. 5 beginning 30 feet West of the Northwest corner of Lot No. 2 a stake in Rabbit Creek; Thence South 25 East keeping 30 feet from Lot No. 2 for a road reservation 750 varas to the Northeast cor. of Lot No. 4; Thence S. to Rabbit Creek; Thence down said creek to place of beginning containing 74 acres of land, described as tract No. 5 in Commissioners' report J. M. Hoskins Co. sur. to District Court of Gregg County, April term A. D. 1910 in the case of Lizzie Crawford et als v. Aurelia Laird et als, * * * which report is on record in Book X pages 178-179 in records of deeds of Gregg County, Texas, for full explanation reference is made to said records.'

"It is to be noted that the deed executed by Douglass and his heirs called for beginning point to be thirty feet West of the Northwest corner of Lot No. 2 and thence to run South 25 East keeping thirty feet from Lot No. 2 for a road reservation. This, in effect calls for the West line of this road as the East line of Lot No. 5, or it may be said that it designates this thirty-foot road or strip as the Eastern boundary of said Lot No. 5, or along the West line of said road. It is to be further noted that the deed refers to the tract as being Lot No. 5 and refers to the decree with a plot then of record. This plot shows that the east line of Lot No. 5 fronting on the strip stops at the exterior line of such road reservation and shows the location of this strip of land for a road.

\* \* \* \* \* \* \*

"Douglass acquired a ten-year limitation title to the whole 30-foot strip, and title to the West half of the strip by virtue of the conveyance to him of Lot No. 5. When he and his children conveyed this lot off, this 30-foot strip was situated upon the eastern edge of his land then conveyed by him. He owned no land on further to the East of the strip."

The 30-foot strip of land in controversy was created as a road reservation in the partition proceedings, but was never actually used in its entirety as a road. Plaintiffs claim this strip of land by limitation, and the jury found that John Douglass had acquired the land by the ten years statute of limitation. The defendants contended that the description used made the 30-foot strip a part of Lot No. 5, and this contention was upheld by the trial court and by the Court of Civil Appeals.

The descriptions relating to this 30-foot strip, as used in the partition proceedings and in subsequent instruments, are substantially as follows:

The description of Lot No. 2 makes no mention of the strip, its west line being "thence N. 25 W. 1415 varas to the center of Rabbit Creek."

The description of Lot No. 5 reads: " * * beginning 30 feet W. of the N. W. cor. of Lot No. 2 * *; thence S. 25 E. keeping 30 feet from the West line of Lot No 2. for a road reservation 750 varas."

The description of Lot No. 4 reads: " * * to a stake 30 feet West of the West line of Lot No. 2, said 30 feet is for a road reservation; thence N. 25 W. keeping 30 feet West of the West line of Lot No. 2."

John Douglass bought Lot No. 5 by this description in 1912, and sold it by the same description in 1929. John Douglass and his children surrendered possession of all the property to their grantees, including this strip. So far as this record discloses, they never made any claim to it until this suit was filed. The controlling question for decision here is: Did the deed from Douglass and his children convey the title to this 30-foot strip of land to their grantees, or did they exclude this strip from such conveyance?

■ It is well known that separate ownership of long narrow strips of land, distinct from the land adjoining on each side, is a fruitful source of litigation and dispute. To avoid this source of contention, it is presumed that a grantor has no intention of reserving a fee in a narrow strip of land adjoining the land conveyed when it ceases to be of use to him, unless such fee is clearly reserved. The reason for the rule is obvious. Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip. See Cox v. Campbell, 135 Texas 428, 143 S. W. (2d) 361; Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S. W. (2d) 1080, 85 A. L. R. 391; Texas Bitulithic Co. v. Warwick (Tex. Com. Appls.), 293 S. W. 160. For an annotation of the decisions bearing on this question, see also 123 A. L. R. 543, 47 A. L. R. 1277, and 2 A. L. R. 7.

■ In this instance Douglass and his children conveyed all

the land they owned in this vicinity adjoining this strip of land, and surrendered possession of such land to the grantees, including the strip in controversy. There is nothing in this record to show that this land was of any benefit to Douglass and his children, or that there existed any reason for reserving it at the time the conveyance was made; nor is there any language used in the deed of conveyance made by them that it was their intention to definitely reserve this strip from such conveyance.

In construing the conveyance from Douglass and his children to their grantees with reference to this strip, it must be kept in mind that in the description of the various subdivisions of the land partitioned, as above described, reference is made to the map accompanying the report of the commissioners, which was duly recorded. The deeds executed afterwards refer to such subdivisions for a definite description of the land conveyed. The map clearly shows that this strip was reserved for a road. The description of the land conveyed by Douglass and his children does not show an intention to reserve this strip of land. In short, they surrendered this strip with the other land conveyed to their grantees. This act definitely indicates that they intended to convey all land owned by them in this survey.

■ In the case of Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S. W. (2d) 1080, 85 A. L. R. 391, the rule of presumption was announced with reference to conveyance of land adjoining a railroad right of way. The rule announced in that case was based upon a practical effect of the intention of the grantor in such conveyance, and not solely upon a consideration of public policy. In the course of the opinion rendered in that case it was said:

"The use of this presumption is merely the application in a different form of the familiar rule of construction which has always been enforced by the courts, that is, to indulge the presumption that a grantor intends to convey to his grantee all of the appurtenant rights incident to the beneficial enjoyment of property which he has conveyed. In other words, when a person conveys a piece of property abutting upon a public highway or nonnavigable stream it is but natural to assume, in the absence of an express reservation to the contrary, that he intends to convey the same with all of the beneficial rights enjoyed by him in its use * * *

"We think the legal presumption is sustained by sound reason when it is based upon the fact that valuable rights and privileges appurtenant to property should be presumed to pass

in a conveyance thereof in the absence of a clear and unequivocal intention to the contrary."

In the recent case of Cox v. Campbell, 135 Texas 428, 143 S. W. (2d) 361, this Court reviewed this question and the decisions relating thereto, and reiterated the following general rule:

"The rule has been definitely announced in the Warwick and Weed cases that where a deed conveys by specific field notes land abutting on a street or public highway or railroad right of way, it conveys title to the property to the center of the street, public highway, or railroad right of way; and such rule is not overcome even though the field notes describing the land stop at the side line of the street, public highway, or railroad right of way, unless a contrary intention is expressed in plain and unequivocal terms."

In 9 Corpus Juris, p. 203, Sec. 97, it is said: "Where a highway is laid off entirely on the owner's land, running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee." For a discussion of the foregoing rule, see the following authorities: Snoddy v. Bolen, 122 Mo. 479, 24 S. W. 142, 25 S. W. 933, 24 L. R. A. 507; Johnson v. Arnold, 91 Ga. 659, 18 S. E. 370; Taylor v. Armstrong, 24 Ark. 102, 107; Haberman v. Baker, 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611; In re Robbins et al, 34 Minn. 99, 24 N. W. 356, 57 Am. Rep. 40; Cuneo v. Champlin Ref. Co., 178 Okla. 198, 62 P. 2d 82; Paine v. Consumers', etc., Co., 6 Cir., 71 F. 626. See also 11 C. J. S., pp. 580, 581, 582, Sec. 35.

In view of the public policy of this State with reference to such strips of land, and the presumption that it was the intention of the grantors to convey such narrow strip to the grantees with the other land adjoining same, we do not think that it affects the rule, so far as the title to the strip is concerned, if the road was never used or if it was abandoned. Amerman v. Missouri, K. & T. R. Co. (Tex. Civ. App.), 182 S. W. 54.

Applying the foregoing principles announced by this Court to the facts involved here, the conclusion is inescapable, from the language used in the conveyance from Douglass and his children to the grantees, that it was the intention of the grantors to include this strip of land in such conveyance. Any other construction of such conveyance would nullify the rule announced in the decisions above cited, and which has become the public policy of this State.

We have carefully considered the question raised in this record, and conclude that the trial court and the Court of Civil Appeals correctly decided the issues involved in this case. Therefore, the judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion delivered October 23, 1940.