## STANOLIND OIL & GAS CO. et al. v. DOYLE et al.

### No. 152, Civil.

District Court, E. D. Texas, Tyler Division. May 20, 1941.

Turner, Rodgers & Winn and Frank J. Scurlock, all of Dallas, Tex., for plaintiff Stanolind.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, Tex., for Atlantic Refining Co. and J. K. Wadley.

Thompson, Knight, Harris, Wright & Weisberg, of Dallas, Tex., for defendants.

ATWELL, District Judge.

The suit is for 2.71 acres of land in Gregg County, Texas, which is said to be oil territory and to have considerable value.

Two of the three plaintiffs are co-tenants. They are not joined together in any other manner, except that they claim that the trespasses and wrongs of the defendants are common against each of the plaintiffs, and they join in the action as permitted by Rules 19 and 20, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Each of the plaintiffs is a non-resident of Texas. The Stanolind is a corporation under the laws of Delaware, the Atlantic Refining Company a corporation under the laws of Pennsylvania, and J. K. Wadley is a resident of the state of Arkansas. The defendants reside in Dallas County, Texas.

The plaintiffs plead that on April 28, 1930, Arthur Christian and wife, Eliza Christian, Jack G. Leak and W. C. Hurst, executed and delivered to B. A. Skipper an oil and gas lease to 107 acres of land, more or less, in Gregg County, Texas.

That said instrument provided that: "It is intended herein to convey in this lease, all the land we own in the above survey, save and except 25 acres sold off of the northwest corner to Earl Christian, deed recorded in Gregg County deed records. It being the intention to include all land owned or claimed by lessor in said survey, or surveys."

It is alleged that plaintiff Stanolind became the owner of an undivided one-half interest in so far "as it covers approximately 20 acres located in the north part thereof." That plaintiffs Wadley and Atlantic owned an undivided one-half interest of said 107 acres, more or less, "in so far as it covers approximately 31 acres located immediately south of the 20 acres referred to in paragraph 3," which is that of Stanolind. "The south line of the approximate 20-acre tract is coincident with the north boundary line of the approximate 31-acre tract."

The plaintiffs then set out metes and bounds of a strip of land of 2.71 acres, of which they allege that "the common boundary line between the 20-acre tract * * * and the 31-acre tract * * * approximately bisects the alleged strip of 2.71 acres."

They claim they have been in actual possession of all of said land, including the 2.71 acres, continuously since 1931.

That the defendants do not own any right, title or interest in the said 2.71-acre tract, yet they continue to assert title to the oil and gas under the same. That they are threatening to trespass upon the property.

They ask for a quieting of their title, removal of clouds, and adjudication that the defendants have no right to said tract, and that they be enjoined from trespassing thereon.

The defendants admit the ownership as alleged by the plaintiffs, but deny the ownership of "approximately 20 acres located in the north part of said survey," or, of approximately 31 acres located immediately south of the 20 acres. They deny that the south line of the 20-acre tract is coincident with the north boundary line of the 31-acre tract, or, that the common boundary line between the two said tracts, "approximately bisects the alleged strip of 2.71 acres."

They admit that they are asserting title to the 2.71-acre tract.

In a cross-action they allege ownership of the 2.71 acres. In the beginning of the description of the tract, out of which they claim ownership of the 2.71 acres, they allege that the Henry Hathaway survey contains "109.71 acres, more or less."

Both parties, by their pleading, place the 2.71-acre tract in the transfer made on April 28, 1930, under which the plaintiffs claim.

The defendant pleads a description for that original transfer of 109.71 acres. The plaintiffs plead that original description of 107 acres. Doubtless, the difference between the two descriptions gives rise to the 2.71 acres.

The defendants make no allegations that there has ever been transferred to them this "109.71 acres," or any part of it.

Furthermore, the language used in the transfer as pleaded by the plaintiffs, and apparently left unpleaded by the defendants, is clearly a valid "more or less" transfer, which would carry more.

After the use of the words, "more or less," the grantor sets out the fact that the tract which was thought to have 100 acres, more or less, and which came from J. M. Farmer, was found, upon survey, to have 107 acres, more or less. In each instance, the tract seems to have been meted and bounded. In addition to that, is the phrase, to-wit, "It is our intention to convey all the lands we own by this transfer," meaning whether 100 acres, 107 acres, or more or less than either of those amounts.

Each places the 2.71 acres within the original Farmer, and later, the April 28, 1930, transfer to Skipper.

The case was filed on February 16, 1940. On May 1, 1941, Judge Bryant of the eastern district, before whom the case had been pending, and who had made several preliminary orders, concluded that he ought not to go further, and asked me to take charge of it.

Upon going over the file, I discovered that there was a motion for summary judgment on the part of the plaintiffs, and some motions to be permitted to take interrogatories by the defendants. Those motions were set down for May 19th.

After having heard the argument on the summary motion, I am of the opinion that the law and the facts are with the plaintiffs.

■ Rule 56 seems to have been complied with by both parties, and no request being made by either party for any further delay of this motion, or, for the filing

of any additional affidavits or depositions, and there appearing to be no issue of fact to be tried, Boerner v. United States, D.C., 26 F.Supp. 769, Seagram-Distillers Corp. v. Manos, D.C., 25 F.Supp. 233, judgment may go for the plaintiffs.

It may be stated that after the title vested in Skipper it finally found its way to Frank R. Foster, who, prior to his death in 1933, made the transfers which vested title in the plaintiffs to the 20 acres, and to the 31 acres, and to the south 31 acres of the remaining 82 acres of the original transferred whole.

Out of the original 107 acres, there had been a transfer of 3 acres, and a transfer of 25 acres, which left approximately 79 acres. Out of this 79 acres, Foster sought to, and did, transfer 20 acres plus 31 acres, plus 31 acres, which aggregates 82 acres.

In such transfers, there is no reservation of a narrow strip of land running from the eastern to the western boundary of the survey such as the 2.71 acres shows itself to be. The wording, as well as the descriptions, of the transfers which he executed on January 24, 1931, January 29, 1931, February 11, 1931, April 10, 1931, April 10, 1931, June 20, 1932, and the release of April 19, 1934, all disclose the evident purpose and intention of making a united whole out of the 82 acres, more or less, without any strip of land between any of the divisions thereof so transferred.

The defendant, Gloria F. Doyle, joined by her husband, Edward F. Doyle, was the wife of Frank R. Foster and claims that a strip of 2.71 acres was never assigned by him, and that her rights thereby arise.

The highest courts of the state of Texas have apparently settled that: "Separate ownership of long narrow strips of land, distinct from the land adjoining on each side, is a fruitful source of litigation and disputes. To avoid this source of contention, it is presumed that a grantor has no intention of reserving a fee in a narrow strip of land adjoining the land conveyed when it ceases to be of use to him, unless such fee is clearly reserved. The reason for the rule is obvious. Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip." Cantley v. Gulf Production Company, 135 Tex. 339, 143 S.W.2d 912, 915. Many cases are cited in that opinion in support of the position. See also Ford v. McRae, 128 Tex. 106, 96 S.W.2d 80; Woods v. Selby Oil & Gas Company, Tex. Civ.App., 2 S.W.2d 895; Id., Tex.Com. App., 12 S.W.2d 994. What happened here gives the transfers very much the same effect as partition deeds. It is not a determination by extrinsic evidence. It is a settlement by presumption.

The case of Zeppa v. Houston Oil Company, Tex.Civ.App., 113 S.W.2d 612, contains no different doctrine. The facts in that case support that particular decision which in no way runs counter to the rule above cited. See also Sun Oil Company v. Smith, Tex.Civ.App., 113 S.W.2d 683.

The rule just exposed has another reason for its foundation. It is a correlating and dove-tailing reason to that mentioned in the rule itself. That reason is that the intention of the parties is the compass that guides the court in construing their acts. Looking at that side a moment, we see that Foster made his sales and transfers so as to cover all that he evidently thought he owned. At no time did he seek to make any sort of a reservation. In the entire chain of title is the constant reminder which we find on the original instrument, that there was, or, might be, more than the amount named in the transfer, but if there was such an excess it was the intention of the grantor to also transfer that. He never made any reservation of any sort. The lessees had their purchases and holdings figured, as shown in the affidavits which raises another argument in their favor. They went into possession, they began to develop, large sums of money were used in the erection of improvements and no attempt was made by the widow of Foster, so far as the record discloses, to assert any claim whatsoever, until this suit was filed against her in February, 1940. So, we have the action of the parties upon their written contracts, which also tends to corroborate the thought that Foster had sold and the buyers had bought all of his interest in that particular body of land.

Judgment may go for the plaintiffs as prayed under the rules.