

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 6, 1947

Hon. Ernest O. Thompson, Chairman
Railroad Commission of Texas
Austin, Texas          Opinion No. V-74

Re: Application of Attorney
General's Opinion No.
O-3181 dated March 24,
1941, to facts of pend-
ing Rule 37 case in Haw-
kins Townsite.

Dear Sir:

This is in response to the request contained
in your letter of February 10, 1947, for an opinion of
this office whether the general rule set forth in answer
to question "9" of Attorney General's Opinion No. O-3181,
dated March 24, 1941, applies to the facts of a pending
Rule 37 (well spacing) case involving lands in the Haw-
kins Townsite.

In answer to question "9", this office held in
Attorney General's Opinion No. 3181 that as a general
rule, where an individual owns lands on each side of a
public street or road "dedicated as such (for) many years",
ownership extends to the minerals under the street or
road. To quote from the opinion:

"A conveyance of a lot bordering on a
street or alley ordinarily passes title to
the center of the street or alley, subject
to the public's easement, unless a contrary
intention is expressed in plain and unequivo-
cal terms. * * * Since the two lots and the
street together constitute one continuous
tract, so far as the ownership of the minerals
is concerned, the street and the two lots must
be considered together in determining whether
"A" is entitled to a permit to drill a well
to prevent the confiscation of his property."

You have underscored that portion of the opin-
ion pointing out that:

"Exceptional cases may arise where the
grantor did not own any interest in the
land covered by the road or street, and
in such cases, of course, the purchaser
of the lot would not by such conveyance
acquire any title in the land covered by
the road or street."

The rule of the Attorney General's opinion
of March 24, 1941, assumes importance in the instant
case in determining whether the Commission's rule
against subdivisions of May 29, 1934, applies. The
Commission's spacing rule for the Hawkins Field, and
the rule against subdivisions provide:

"No well shall be drilled hereafter for
oil and gas or either of them nearer than
nine hundred thirty-three (933) feet to
any other completed or drilling well on
the same or adjoining tract or farm, and
no well shall be drilled nearer than four
hundred sixty-six (466) feet to any pro-
perty line, lease line or subdivision
line; provided that, subject to the fur-
ther provisions hereof, the Commission,
in order to prevent waste or to prevent
the confiscation of property, will grant
exceptions to permit drilling within
shorter distances than above prescribed
whenever the Commission shall determine
that such exceptions are necessary either
to prevent waste or to prevent the con-
fiscation of property. * * *"(Emphasis
supplied)

"IT IS ORDERED by the Railroad Commission
of Texas, that in applying Rule 37 (Spac-
ing Rule) of State-wide application and
in applying every rule with relation to
spacing in every field in this State, no
subdivision of property made subsequent
to the adoption of the original spacing
rule will be considered in determining
whether or not any property is being con-
fiscated within the terms of such spacing
rule, and no subdivision of property will
be regarded in applying such spacing rule
or in determining the matter of confisca-
tion if such subdivision took place subse-

quent to the promulgation and adoption
of the original spacing rule."

In the case pending before you, applicant's
lessor owns Lots 9 and 10 in Block 7 of the Hawkins
Townsite, the land upon which a well permit is applied
for under the confiscation exception to the spacing
rule, and also owns one and a fraction acres of land
directly north of applicant's tract, but separated from
applicant's tract by a public street or road of the Town
of Hawkins, known as Forest Avenue. The two tracts of
land north and south of Forest Avenue were leased sep-
arately by applicant's lessor to different lessees. Lots
9 and 10 combined are too small to permit drilling with-
in the distances from lease lines set forth in the spacing
rule. Applicant and his lessor claim not to own the land
underlying Forest Avenue, and therefore claim to be en-
titled, under the confiscation exception to the spacing
rule, to at least one well permit on combined lots 9
and 10 under the well established rule of Dailey v. Rail-
road Commission, 133 S.W. (2d) 219, writ refused, and
numerous other cases, so holding.

Those protesting the granting of the well per-
mit contend, on the other hand, that since the applicant's
lessor owns land on each side of Forest Avenue, the gen-
eral rule announced by the Attorney General's Opinion No.
O-3131, question 9, applies so that when the applicant's
lessor leased the tracts north and south of Forest Avenue
separately to different lessees, the Commission's rule
of May 29, 1934, against subdivisions was infringed. As
you know, it is well settled that no subdivision lessee
is entitled as a matter of right to a well permit under
the confiscation exception (Railroad Commission v. Miller,
165 S W. (2d) 504). In such cases it is the Commission's
duty to entertain an application upon the entire land
area as it existed prior to subdivision, and to locate
the well upon that portion of the entire tract as may best
comport with conservation practices. See Attorney Gen-
eral's Opinion No. O-7046-A, dated March 8, 1946.

The general rule set forth in Attorney General's
Opinion No. O-3131, is, as stated by the court in Gold-
smith v. Humble Oil & Refining Company (Texas Supreme
Court, February 19, 1947, unreported as yet):

"* * * based upon the well established
general rule applied in Rio Bravo Oil
Company v. Weed, 121 Texas 427, 50 S.W.

2d 1030, which was followed in later
decisions, that when a conveyance is
made of a lot or a tract of land a-
butting upon a street or highway, the
fee to which belongs to the owner of
the abutting land, a presumption is
indulged that the grantor intended to
convey the fee to the center of the
street or highway, or all of it de-
pending upon the circumstances unless
a contrary intention is shown. Cox v.
Campbell, 135 Texas 423, 143 S.W. 2d
361; Cantley v. Gulf Production Co.,
135 Texas 339, 143 S.W. 2d 912."

The rule has been termed "a rule of con-
struction, and not an absolute rule of law", 11 C.J.S.
582, § 35, to determine the intention of the parties
to conveyances. There are many qualifications to the
rule, one of which, as pointed out by the writer of
Opinion No. 0-3181, is that the grantor to the deed
must have owned the land covered by the road or street
at the time of his conveyance, or else title to such
area could not pass to the grantee. Day v. Chambers,
62 Tex. 190, Roberts v. Shell Pipeline Corporation,
175 S.W. (2d) 106. From the recent opinion of the
Supreme Court in the Goldsmith case, it is apparent
that there are other qualifications. In order to
raise the presumption, the deed or conveyance must
make reference to a road, passageway, or alley (or pos-
sibly to a map or plat showing a road, passageway, or
alley); and, as stated by the Court:

"But more important to support the pre-
sumption is the existence of a highway,
street or passageway in which there is
an easement at the time when the deed is
made. We have found no case applying the
presumption when the conveyance makes no
reference to a highway, street or passage-
way and when, at the time the deed is exe-
cuted, the land conveyed is not bounded by
a highway, street or passageway in which an
easement has been created or acquired."
(Emphasis supplied)

The Court then proceeded to hold that since no
street, road, or alley was shown to have existed in 1880

when the land in question was conveyed, there was no occasion to indulge the presumption merely because a street or alley was shown to have existed at a later date. In reaching this result the court relied upon the authority of Raleigh-Hayward Co. v. Hull, 167 Wash. 39, 8 Pac. (2d) 988. In that case although the land was conveyed by lot and block number by reference to a plat showing the street area in question, it was held that since the street was not in existence at the time of the conveyance, no title to the street area passed to the grantee. This rule is also stated in 11 Corpus Juris Secundum, § 35 at page 504; and see Perry v. Ball, Tex. Civ. App., 113 S.W. 533, and Peoples v. Smith Brothers, 65 S.W. (2d) 777, writ dismissed.

From the foregoing we gather that to support the presumption of title stated as the general rule in Opinion No. O-3181, the following must appear: (1)That the grantor owned the land beneath the road, street, or alley at the time of the conveyance; (2) that the deed refer to a road, street, or alley, or to a plat showing an abutting road, street, or alley; (3) that the road, street, or alley be in existence at the time of the conveyance; and (4) that it is the first conveyance by a grantor of his land bordering on a road, street, or alley, the fee to which is also owned by him, that controls, and not subsequent conveyances. With these rules in mind we shall review the facts which are before you as we have gathered them from your letter and from your files 31,564, 31,642, 32,180, 32,747 and 32,747-A.

In 1870 J. P. Blackburn and wife conveyed 320 acres of land in the Brewer Survey, Wood County, Texas, to A. A. Blackburn and wife. Of this 320 acres A. A. Blackburn and wife thereafter conveyed 90 acres to the Texas & Pacific Railway Company in 1873. Sometime after that date, the exact date not being shown, the Texas & Pacific Railway Company platted, or endeavored to plat, the 90 acres into lots, blocks, and streets as the Townsite of Hawkins. The reason that the exact date of the platting of the Hawkins Townsite is not in evidence, it appears, is that the Courthouse at Wood County burned in December, 1878, and all records were destroyed. The only presently recorded plat of the Townsite is one filed for record by the Texas & Pacific Railway Company in the year 1909. The reason it is stated that the Texas & Pacific Railway Company "endeavored to plat the ninety acres" is that it appears

undisputed in the evidence before you that the Townsite area shown on the plat filed by the Texas & Pacific Railway Company in 1909 is not the exact 90 acres deeded to the Railway Company in 1873.

The 90 acres conveyed to the railway in 1873 came out of the Southeast quarter of the Brewer Survey, the north boundary line of which quarter was the north boundary line of A.A. Blackburn's 320-acre tract. The conveyance to the Railway Company by Blackburn of the 90-acre tract did not follow this north boundary line, however, but ran to the south thereof, leaving in Blackburn a triangular tract of approximately 5 acres bounded by the north-west line of the Texas and Pacific Railway Company 90-acre tract, by the eastern boundary line of the Blackburn tract, and by the northern boundary line of the original 320-acre Blackburn tract. Within this triangular 5-acre tract lies the applicant's tract and Forest Avenue, separating his other lands to the north.

It is contended by the protestant that sometime after the original dedication plat of the Texas & Pacific Railway Company was filed (the date of which is not shown in evidence), the Railway Company sold Lots 9 and 10 of Block 7, applicant's tract to someone. To quote from protestant's motion for rehearing, your file No. 31,642:

"Petitioner does not know the exact date of this conveyance nor to whom it was made, since the deed records of Wood County, Texas containing the record of the deed were destroyed by fire. This deed under the laws of Texas operated to convey the fee title to that portion of Forest Street abutting (Lots 9 and 10), to the grantee subject to the easement in favor of the public."

Applicant, on the other hand, proved that Lots 9 and 10 came to his lessor in a chain of title from C. A. Hargett and his wife, B. L. Hargett, under a deed, offered in evidence, dated February 21, 1896. It was uncontradicted that "B.L. Hargett" was Beulah L. Hargett, the daughter of A.A. Blackburn and wife, Jane E. Blackburn. Applicant therefore contended that since there was nothing in the record to show that the Hargetts acquired title to Lots 9 and 10, Block 7, from the T. & P., it must be assumed that title was acquired by Mrs. Hargett

by descent or by will from her father, A.A. Blackburn. Parenthetically, it is the writer's opinion that it would be more logical to assume that Beulah Blackburn Hargett acquired the property either by descent or devise from her father than it would be to assume that her father sold the property to the T. & P. Railway Company who then in turn sold to his daughter.

The date of A. A. Blackburn's death was not shown; nor was the existence of a road, street, or alley shown at such time or at any time between the year 1873 (when Blackburn conveyed the 90-acre tract to the T. & P. Ry. Co.) and 1896 (when Mrs. Hargett conveyed the property to a grantee in applicant's lessor's chain of title). The first date proved of the existence of Forest Avenue, or any street, road, or alley in its place is the year 1909 when the Railway Company filed its plat of the Hawkins Townsite showing Forest Avenue. In this connection we quote from your letter:

"No evidence is found in the record that Forest Avenue was in fact a street in 1896 or at any time previous thereto."

Based upon the record made in the case, we have concluded that the facts necessary to give rise to the presumption of law stated as a general rule in Attorney General's Opinion No. O-3181, are not in evidence before you. Under the protestant's theory this presumption could only arise in connection with the alleged missing deed of Lots 9 and 10, Block 7, from the T. & P. Railway Company to a grantee or grantees unknown and given at an unknown date, but presumably between the years 1873 when the T. & P. Railway Company acquired the 90-acre tract from Blackburn and the year 1896 when Mrs. Hargett and her husband conveyed the property. Protestant cannot produce this deed, it is alleged, by reason of the Wood County deed records being destroyed in a fire in 1878. In the absence of this deed we cannot determine whether the grantor did or did not intend to convey the land area under the alleged street.

Protestant's theory of the case, in order to prevail, and fall within the general rule of Opinion No. O-3181, should be supported by: (1) Surveying evidence that the deed from A.A. Blackburn to the Railway Company did in fact cover the road area of Forest Avenue; (2) some character of evidence of the existence and date of the alleged missing deed from the Texas & Pacific Railway

Company to grantors in the Hargett chain of title; (3) and, as required by the most recent expression of the Supreme Court in the Goldsmith case, evidence of the existence in fact of a public road, street, or alley on the date of the alleged missing conveyance.

Applicant's theory of the case, in order to be complete, should be supplemented by some character of evidence of the means whereby the Hargetts acquired the applicant's property from the Blackburns (either by descent, will, or deed); and if by descent or will, the date of Blackburn's death, and the non-existence of a public road, street, or alley along the area now known as Forest Avenue on such date.

The Goldsmith case was decided by the Supreme Court on February 19, 1947, and it is evident that the case before you was not developed under the rule handed down in that decision. In view of this, the undeveloped facts, and the recent decisions of the Supreme Court in Thomas v. Stanolind Oil & Gas Company, 198 S.W. (2d) 420, and Trapp v. Shell Oil Company, 198 S.W. (2d) 424, giving finality to fact findings of the Commission unless clearly unreasonable, arbitrary, or capricious, it may be that you will conclude that it would impose an unfair burden on either the protestant or the applicant to send either to court on the basis of the record as it now stands with the weight of your presumed fact findings on these undeveloped issues against the party losing before the Commission.

Should you so conclude, it is respectfully suggested that you receive additional evidence from the parties as outlined in this opinion.

SUMMARY

(1) The general rule stated in Opinion No. 0-3181 to the effect that where an individual owns land on each side of a public street, road, or alley, he is ordinarily presumed to own the fee to the street, subject to the public's easement, does not apply unless (1) at the time of the conveyance the grantor of the deed owned the land beneath the road, street, or alley; (2) the grantor's deed referred to the road, street, or alley or to a plat showing an

abutting road, street, or alley; and (3) the road, street, or alley was in existence at the time of the conveyance.

(2) Under the record made in a pending Rule 37 case, the Railroad Commission may conclude to receive additional evidence from the parties under the rule of Goldsmith vs. Humble Oil & Refining Company, recently decided by the Supreme Court, as to the existence in fact of a public road, street or alley at pertinent dates, since the case before the Commission was not developed as required by the Goldsmith decision.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By James D. Smullen
James D. Smullen
Assistant

JDS/jt/lh

APPROVED: March 6, 1947

Price Daniel
ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BWB, Chariman