# Supreme Court of Texas

No. 21-1063

In re Christopher S. Kappmeyer and Roxana P. Kappmeyer,
*Relators*

On Petition for Writ of Mandamus

**Argued December 1, 2022**

JUSTICE LEHRMANN delivered the opinion of the Court.

In this mandamus proceeding arising out of a dispute between property owners and a homeowners association regarding enforcement of amended restrictive covenants, the plaintiff owners challenge the trial court's order requiring them to join all 700 other owners in the subdivision as parties or face dismissal of their suit. We hold that the trial court abused its discretion in compelling joinder of the other owners and that the plaintiffs lack an adequate appellate remedy. Accordingly, we conditionally grant relief and order the trial court to vacate its order.

## I. Background

The Key Allegro Island Estates subdivision is located on an island in Aransas Bay near Rockport, Texas. Key Allegro is divided into five sections, or "units." Relators Christopher and Roxana Kappmeyer own

three lots in Unit I, which comprises approximately 190 properties; in total, Key Allegro comprises approximately 700 properties. Some are bayfront properties, while others abut one of the canals that crisscross the island.

Between 1962 and 1974, the subdivision's developer executed and recorded restrictive covenants for each of the five units. The documents are essentially identical and largely consist of architectural and use restrictions. They do not provide for mandatory association dues or assessments of any kind. In fact, they contain only a single reference to an owners association in a paragraph discussing canal maintenance:

> [Each lot owner is] responsible for the maintenance of the portion of any channel contiguous to his property in accordance with the provisions hereof. The KEY ALLEGRO CANAL OWNERS ASSOCIATION shall have the privilege of curing any default of the owner of such property in connection with the foregoing at any time and any reasonable expense incurred in so doing shall be paid by the owner of such property.

The parties appear to agree that each unit was also subject to an "Agreement Relating to Owners of Property on Designated Canals and Waterways," which conferred on the referenced Canal Owners Association the duty to maintain certain quasi-public areas and the authority to levy related assessments and liens against owners of canal-adjacent lots. Those agreements are not in the mandamus record, so the scope of the association's maintenance responsibilities and related assessment authority is unclear. However, none of the Kappmeyers' lots are adjacent to a canal, and it appears undisputed that they were not subject to assessments under the agreements or the original restrictive covenants.

2

In 2017, the Board of Directors of the Key Allegro Canal and Property Owners Association (Association)—successor to the Canal Owners Association by "de facto merger"—executed "Amended and Restated Deed Restrictions, Covenants and Conditions" for each of the five units. Like the original restrictions, the amended restrictions for each unit are essentially identical, and each document states that it amends all prior recorded deed restrictions pertaining to the associated unit. The amended restrictions differ from the originals in several key respects, including authorizing the Association: to enforce the restrictions; to cure an owner's default on various maintenance obligations, be reimbursed by the owner, and impose a lien for unreimbursed costs; to make additional rules and regulations consistent with the restrictions; and to impose a lien for unpaid dues and assessments.[1] The subdivision's property owners did not vote on the amended restrictions prior to their adoption.

The Kappmeyers sued the Association, requesting a declaratory judgment that the Unit I amended restrictions "cannot be enforced against them" because (1) the required percentage of owners did not approve the amended restrictions;[2] (2) if the amended restrictions are Board rules, they conflict with the original restrictions; and (3) the amended restrictions impose new and additional restrictions against an

---

[1] According to the Association's president, at the time of the trial court's hearing on the underlying motion, the annual dues were $321 for an off-canal lot and $424 for an on-canal lot.

[2] The Kappmeyers allege that an amendment to the restrictions is invalid unless 100% of the owners—or, in the alternative, 67% of the owners or, in the further alternative, a majority of the owners—vote to adopt it.

existing owner. The Kappmeyers alternatively asserted a claim to quiet title "as against any [Association] lien or claim" by virtue of the amended restrictions, as well as a claim that the Association breached the original restrictions by exercising powers beyond those authorized therein.

The Association filed a motion to abate the claims for declaratory relief until the Kappmeyers joined all necessary parties to the suit—specifically, all Key Allegro property owners or, alternatively, all Unit I owners. They argued that the relief the Kappmeyers seek requires a finding that the Board lacked the power to adopt the amended restrictions, which would affect all owners. They further argued that such a declaration subjects the Association to the possibility of being sued by other owners, putting it at risk of multiple or inconsistent obligations. The trial court granted the motion and ordered the Kappmeyers to join and serve all Key Allegro property owners within 90 days or face dismissal of their declaratory-judgment claims. The court of appeals denied the Kappmeyers' petition for writ of mandamus, leading them to seek mandamus relief in this Court.

## II. Discussion

Mandamus relief is an extraordinary remedy requiring the relator to show that (1) the trial court clearly abused its discretion and (2) the relator lacks an adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). We examine each element in turn.

4

## A. Abuse of Discretion

A trial court abuses its discretion when it acts with disregard of guiding rules or principles or in an arbitrary or unreasonable manner. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018). A trial court's "failure to analyze or apply the law correctly is an abuse of discretion." *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001) (citation omitted). Here, we consider whether the trial court failed to correctly analyze or apply the law governing compelled joinder of parties.

When a party seeks to compel joinder of persons as parties to a proceeding, including a declaratory-judgment action, Texas Rule of Civil Procedure 39 governs. *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 n.3 (Tex. 2017) (citing *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004)).[3] Rule 39 describes the following persons who "shall be joined":

> (a) **Persons to Be Joined if Feasible.** A person . . . shall be joined as a party in the action if
>
> > (1) in his absence complete relief cannot be accorded among those already parties, or

---

[3] The Uniform Declaratory Judgments Act states that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM. CODE § 37.006(a). However, unlike Rule 39, the Act does not authorize a court to compel joinder; rather, it confirms that a declaration "does not prejudice the rights" of nonparties to the proceeding. *Id.*; TEX. R. CIV. P. 39(a) ("If [a necessary party] has not been so joined, the court shall order that he be made a party."). Thus, "Rule 39 determines whether a trial court has authority to proceed without joining a person whose presence in the litigation is made mandatory by the Declaratory Judgment[s] Act." *Brooks*, 141 S.W.3d at 162.

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may

(i) as a practical matter impair or impede his ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If he has not been so joined, the court shall order that he be made a party. . . .

TEX. R. CIV. P. 39(a) (formatting altered). The Association does not argue that joinder is required under Rule 39(a)(1).

As to Rule 39(a)(2), our opinion in *Brooks* forecloses any assertion that joinder is required under subsection (i). 141 S.W.3d at 163. In that case, which involved a declaratory-judgment action by eight property owners challenging their homeowners association's attempt to increase assessments and impose late fees, we confirmed that because the Declaratory Judgments Act provides that a trial court's declaration does not prejudice the rights of nonparties, "[a]ny non-joined homeowner would be entitled to pursue individual claims contesting [the association's] authority to raise assessments or impose fees, notwithstanding the trial court's judgment in the current case." *Id.* Accordingly, Rule 39(a)(2)(i) did not require joinder of the other homeowners, whose absence did not impair their ability to protect whatever interest they had in the litigation. *Id.* Here, it is equally true that the nonparty Key Allegro property owners may pursue individual claims contesting the Association's authority to enforce the amended restrictions and that the outcome of the Kappmeyers' suit does not affect

6

their ability to do so. Accordingly, Rule 39(a)(2)(i) did not authorize the trial court to compel the Kappmeyers to join the other owners.

The Association principally relies on Rule 39(a)(2)(ii), which requires joinder of a person who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." TEX. R. CIV. P. 39(a)(2)(ii). Applying this rule requires a two-step inquiry. First, does the person whose joinder is sought "claim[] an interest relating to the subject of the action"? *Id.* Second, will disposition of the action in the person's absence leave any of the current parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest"?[4] *Id.* If the answer to either of those questions is no, then Rule 39 does not mandate joinder of that person and, in turn, does not authorize the trial court to order that he be made a party. *See Crawford*, 509 S.W.3d at 912.

We begin with whether the absent property owners "claim[] an interest relating to the subject of the action." Our opinion in *Crawford* is instructive in answering that question, and we examine it in some

---

[4] In *Brooks*, we recognized and "appreciate[d] the risk that, unless each homeowner is joined in one suit, [the association] may be subject to inconsistent judgments." 141 S.W.3d at 163. We ultimately held that the association waived error by failing to complain in the trial court about the absence of the nonjoined owners; thus, we did not engage in the two-step analysis necessary to evaluate whether joinder was required under Rule 39(a)(2)(ii). *Id.*

7

detail.  In that case, Crawford asserted ownership of the "Crawford tract" mineral estate (as an heir of the prior owner) and sued lessee XTO Energy for failing to make royalty payments on mineral production from the tract.  *Id.* at 908–09.  XTO took the position that, by virtue of the common-law "strip and gore" doctrine,[5] the prior owner had conveyed the Crawford tract to the owners of property adjacent to that tract and that those owners, not Crawford, were entitled to the royalties Crawford demanded.  *Id.*  The principal issue in this Court was whether the trial court abused its discretion in granting XTO's motion to abate and compel joinder of the forty-four adjacent owners under Rule 39 and in dismissing Crawford's suit when he failed to join them.  *Id.* at 909.

XTO argued that the adjacent owners claimed an interest relating to the subject of the suit by virtue of their alleged ownership interest in the Crawford-tract minerals.  *Id.* at 911.  In rejecting this argument, we elaborated on the meaning of "claim" in the Rule 39 context, explaining that it means "to demand recognition of (as a title, distinction, possession, or power) esp. as a right"; "to demand delivery or possession of by or as if by right"; and "to assert or establish a right or privilege." *Id.* at 912 (citation omitted).  We held that the owners' own deeds and

---

[5] Under the strip-and-gore doctrine:

> Where it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance; unless it clearly appears in the deed, by plain and specific language, that the grantor intended to reserve the strip.

*Crawford*, 509 S.W.3d at 909 (quoting *Cantley v. Gulf Prod. Co.*, 143 S.W.2d 912, 915 (Tex. 1940)).

leases reflected no such "claim" to the royalties attributable to the Crawford tract, nor had the owners taken any other action to "demand" or "assert" a right to any of those royalties. *Id.* at 913. Importantly, although we recognized that the adjacent owners necessarily had a pecuniary interest in the outcome of the litigation because it impacted their royalty payments, we deemed it significant that XTO had unilaterally made the determination to credit the Crawford-tract royalties to those owners. *Id.* That the owners *could* claim an interest in the subject of the action did not render joinder mandatory under Rule 39; rather, the rule "requires joinder, in certain circumstances, of persons who *actually* claim such an interest." *Id.* (emphasis added).

Here, the absent Key Allegro property owners—or at least the absent Unit I owners—certainly could claim an interest in the enforceability of the amended restrictions against a particular owner like the Kappmeyers.[6] For example, they could have voted for or against adopting the amended restrictions. But the Kappmeyers' principal complaint is that the amended restrictions were not put to a vote of the Key Allegro owners at all; just as the lessee in *Crawford* made the unilateral decision to pay royalties to the absent property owners, here, the Association's Board unilaterally made the determination to adopt

---

[6] Arguably, the owners of property in the other units could not even do that, as each unit is governed by its own set of declarations and the Kappmeyers challenge only the Unit I restrictions. But we need not address whether those owners should be treated differently for purposes of the Rule 39 analysis because we hold that the rule does not authorize joinder even as to the Unit I owners.

amended property restrictions.[7]  And the Association points to no action on the property owners' part that amounts, either directly or indirectly, to demanding or asserting an interest in enforcing (or not enforcing) the amended restrictions against a particular owner.  *See Epernay Cmty. Ass'n v. Shaar*, 349 S.W.3d 738, 746 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that joinder of other property owners was not required in owners' suit seeking a declaration that the homeowners association lacked authority to assess fees against the plaintiffs, in part because they had not sought a declaration regarding the rights of other owners).[8]

The distinction we highlighted in *Crawford* between persons "having" an interest that could be claimed and actually "claiming" that interest makes sense in the Rule 39(a)(2) context precisely because it involves compelling their joinder in a lawsuit.  Here, the trial court has required the Kappmeyers to sue several hundred additional parties who may or may not, colloquially speaking, have a dog in the Kappmeyers' fight.

---

[7] We express no opinion on the Board's authority to do so or on the merits of the Kappmeyers' claims.

[8] In holding that the trial court did not abuse its discretion in denying the motion for joinder in *Epernay*, the court of appeals also noted that the Association "did not provide the trial court with any evidence as to the identity, number, or interests of these other homeowners."  349 S.W.3d at 747.  Here, the Association correctly notes that it provided the trial court with a spreadsheet identifying the Key Allegro property owners.  But that spreadsheet does not change the scope of the relief the Kappmeyers seek or clarify the interest the absent property owners purportedly "claim."

The Association argues that unlike the adjacent owners in *Crawford*, the Key Allegro owners claim an interest in the litigation through their deeds because the litigation necessarily impacts their inherent property rights. *See Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987) (noting that "the right to require that all property owners pay assessment fees is an inherent property right"). Specifically, the Association argues that the declaration the Kappmeyers seek will impact other owners, citing the Association's president's testimony that it would revert the Key Allegro governing documents back to the original restrictions. In support, the Association cites *April Sound Management Corp. v. Concerned Property Owners for April Sound, Inc.*, in which a subdivision's developer sought a declaratory judgment that it had the right, under the deed restrictions applicable to the subdivision, to adjust, waive, or discontinue the maintenance charge that the restrictions imposed on all subdivision owners. 153 S.W.3d 519, 521 (Tex. App.—Amarillo 2004, no pet.). The court of appeals held that such a judgment "would, in effect, change the rights and interests of each property owner in the association," making them all necessary parties under Rule 39. *Id.* at 526; *see also Dahl v. Hartman*, 14 S.W.3d 434, 436–37 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that all property owners in a subdivision were necessary parties where the plaintiff owner sought broad declaratory relief that the subdivision's deed restrictions had not been extended and a homeowners association had not been formed).

As we made clear in *Crawford*, however, the fact that the ultimate judgment could affect nonparties does not in itself require their joinder

under Rule 39. In that case, compelling joinder of the absent adjacent property owners was improper even though the judgment sought would have a direct pecuniary effect on them in the form of a reduction in the amount of royalties they would receive. *See Crawford*, 509 S.W.3d at 913. Again, the difference between having an interest and claiming one is at the heart of the Rule 39(a)(2) analysis. *See id.* ("[T]he landowners did not need to actually come to court to assert an interest in order to claim an interest under Rule 39. But they needed to do *something*, and the adjacent landowners have done nothing." (cleaned up)).[9]

Because the absent Key Allegro owners do not "claim[] an interest relating to the subject of the action," the trial court abused its discretion

---

[9] In holding that the adjacent property owners in *Crawford* did not claim an interest in the subject of the litigation "solely by virtue of their deeds and leases," we explained that those deeds and leases did not even describe the disputed tract. 509 S.W.3d at 912. That fact, we held, distinguished *Crawford* from earlier decisions, including precedent from this Court, involving oil-and-gas leases and title disputes in which joinder of nonparty lessors was required. *See id.* at 912–13 (citing, inter alia, *Veal v. Thomason*, 159 S.W.2d 472, 477 (Tex. 1942) (holding that all property owners who executed leases on a unitized block were necessary parties in a suit to cancel one of the leases)). The Association argues that this case is not similarly distinguishable, as the Key Allegro owners undisputedly have an ownership interest in property in the subdivision. However, a significant *legal* distinction between *Veal* and *Crawford*, which we did not discuss in the latter opinion, is that *Veal* predated Rule 39, which requires joinder of a person who "claims" an interest under certain circumstances; *Veal* instead applied a common-law rule that defined "necessary parties" as "such persons as *have or claim* a direct interest in the object and subject matter of the suit and whose interests will necessarily be affected by any judgment that may be rendered therein." 159 S.W.2d at 477 (emphasis added) (citation omitted). As discussed, under our modern procedural rules the difference between "having" an interest and "claiming" one is meaningful for joinder purposes. For that reason, *Veal* and its progeny are of limited usefulness in analyzing the issue.

12

in compelling the Kappmeyers to join those owners under Rule 39(a)(2). However, we note, as we did in *Crawford*, that the Association is not without recourse. To the extent it has legitimate concerns about future litigation involving other owners, the Association may seek to join those owners as parties under Rule 37. Tex. R. Civ. P. 37 ("Before a case is called for trial, additional parties necessary or proper parties to the suit, may be brought in, either by the plaintiff or the defendant, upon such terms as the court may prescribe; but not at a time nor in a manner to unreasonably delay the trial of the case."). And nothing prevents the Association from notifying the other owners of the underlying action in an effort to determine the most efficient course of action. But it is not entitled to an order requiring the Kappmeyers to join hundreds of other property owners in order to pursue their claims against the Association.

## B. Inadequate Appellate Remedy

In addition to showing an abuse of discretion, to be entitled to mandamus relief the Kappmeyers must show that they lack an adequate remedy by appeal. *Prudential*, 148 S.W.3d at 135–36. "[W]hether an appellate remedy is 'adequate' so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules." *Id.* at 137. An appellate remedy is not inadequate *merely* because of the cost or delay of going through trial and the appellate process. *Id.* at 136; *Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992). However, mandamus relief may be appropriate if the challenged trial court order places tremendous strain on the requesting party to the point that the party might "succumb[] to the burden of the litigation," if the order "radically skew[s] the

13

procedural dynamics of the case," or if failure to grant relief will result in waste of judicial and public resources. *Prudential*, 148 S.W.3d at 136–37 (citing cases).

Relying on *Prudential*, the Fourteenth Court of Appeals granted mandamus relief in a case that bears remarkable similarity to the underlying suit. *In re Corcoran*, 401 S.W.3d 136 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). That case also involved a dispute between a property owner and a homeowners association in which the owner sought mandamus relief from the trial court's order compelling joinder of the other owners in subdivisions governed by the association. *Id.* at 138. After concluding that the trial court abused its discretion,[10] the court of appeals held that the owner had no adequate remedy by appeal because (1) the order would "delay the trial and greatly increase costs" to the point where the owner was "in danger 'of succumbing to the burden of litigation,'" and (2) the order had "'radically skew[ed] the procedural dynamics of the case.'" *Id.* at 139–40 (quoting *Prudential*, 148 S.W.3d at 136); *see also Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 595 (Tex. 1996) (holding the defendant lacked an adequate appellate remedy with respect to the trial court's order requiring it to pay the plaintiff's attorney's fees as the case progressed because it "radically skew[ed] the procedural dynamics of the case").

Here, the trial court's order requires the Kappmeyers to bear the expense of joining several hundred parties to their suit at an estimated

---

[10] The underlying dispute related to the association's decision to allow an owner to circumvent a deed restriction in a specific instance. *Corcoran*, 401 S.W.3d at 138–39.

cost of between \$60,000 and \$110,000. The order puts the Kappmeyers in danger of succumbing to the burden of litigation, and such orders all but ensure this kind of litigation will never be pursued. *See Prudential*, 148 S.W.3d at 136 (noting that mandamus relief was appropriate in *Mayfield* because the erroneous ruling was clear, subject to repetition, and easily correctable). We hold that the Kappmeyers lack an adequate appellate remedy.

### III. Conclusion

The trial court clearly abused its discretion in granting the Association's motion to abate and ordering the Kappmeyers to join the other Key Allegro property owners. Because the Kappmeyers lack an adequate remedy by appeal, we conditionally grant their petition for writ of mandamus and order the trial court to vacate its order. Our writ will issue only if the court does not comply.

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 12, 2023