DOYLE et al. v. STANOLIND OIL & GAS CO. et al.

No. 10045.

Circuit Court of Appeals, Fifth Circuit.

Nov. 29, 1941.

Rehearing Denied Jan. 12, 1942.

Sol Goodell, of Dallas, Tex., for appellants.

Frank J. Scurlock and Snowden M. Leftwich, both of Dallas, Tex., for appellees.

Before HUTCHESON and McCORD, Circuit Judges, and DAWKINS, District Judge.

HUTCHESON, Circuit Judge.

The suit was for the title and possession of a tract of 2.71 acres of land, described, in the petition, by metes and bounds, and, as bisected by the common boundary line between two adjoining tracts, one owned by one of the plaintiffs, the other by the other two. There was a motion to dismiss, a plea of mis-joinder of parties-plaintiffs, because the petition showed not joint but several ownerships, and a motion for more definite statement or for bill of particulars. These, overruled, there was an answer and cross action in effect denying plaintiffs', and asserting defendants' title. Plaintiffs thereupon moved for summary judgment on the basis of an oil and gas lease,[1] dated April 28, 1930, from Arthur Christian to B. A. Skipper, under which both plaintiffs and defendants hold, a deed from Arthur Christian to Earl Christian,[2] a contract,[3] and five assignments,[4] executed by Frank R. Foster,

[1] This after a metes and bounds description of a tract out of the Henry Hathaway Survey, concluding "thence to the place of beginning containing 104 acres of land more or less", continued "this being the same land deeded to us by J. M. Farmer by deed recorded in Vol. 38, page 189, Deed Records, Gregg County, except 3 acres sold to the colored school and church, there being 100 acres more or less in said tract purchased from J. M. Farmer but in a recent survey there was found to be 107 acres of land more or less". It concluded thus: "It is intended herein to convey in the lease, all land we own in the above survey except 25 acres sold off the N W corner to Earl Christian, deed recorded in Gregg County, Deed Records, it being the intention to include all land owned or claimed by lessor in said survey."

[2] Dated October 12, 1938 and conveying by metes and bounds 25 acres more or less out of the J. M. Farmer tract.

[3] A contract of purchase dated January 24, 1931, from Foster to Roeser and Pendelton, reciting that Foster is the owner and desires to sell an undivided interest in "the oil and gas lease on the N½ of the S 62 acres out of the Arthur Christian tract in the Henry Hathaway Survey, being 31 acres more or less."

[4] (a) Assignment of oil and gas lease from Foster to Force dated January 29, 1931, containing the same description as set out in the Christian-Skipper lease above, reciting that the lease and all rights under it are now owned by Foster, and concluding that he assigns all rights, title and interest of the original lessee and present owner of the lease in so far as it covers the S 31 acres of the above-described

plaintiffs' decedent, a release[5] executed by plaintiff, an affidavit[6] of a surveyor, that the area calculated according to the metes and bounds description used in the Arthur Christian lease, was 104.95 acres, and that deducting the Earl Christian 25 acres, there would be left in the lease, when Foster made his conveyances, 79.94 acres, the fact that Foster during his life time had never, and his widow had not until in 1940, claimed that he had left a strip or gore between the North 20 and the North 31 of the South 62 acre tracts and that plaintiffs have gone upon and developed the two tracts for oil as adjoining owners. Their contention was, that the instruments Foster executed, including those under which plaintiffs claim, show that he intended to and did assign all of his right, title and interest in and to the Christian lease hold estate, and that instead of being separated by a narrow gore or strip, the tracts owned by plaintiffs adjoin.

The only attempted controversion of these instruments, the affidavit and these facts, by defendants, was the filing of a surveyor's affidavit which stated; that the Christian lease, by actual survey on the

---

tract of land; (b) an assignment of oil and gas lease from Foster to Hughes dated February 11, 1931, containing the same references and description as the Christian lease as above set out and assigning the said lease in so far as it covers the N 20 acres of the above-described tract of land. (c) An assignment to Roeser and Pendelton dated April 10, 1931, referring to the Christian-Skipper oil and gas lease for description, and transferring an undivided one-half of the owner's interest in it in so far as it covers the N 31 acres of the S 62 acres of the land covered by it, and describing the 31 acres as located as follows: "The North boundary line of said South 62 acres shall be located by running a line parallel to the South boundary line of said land covered by said lease, and so as to cut off 62 acres in addition to and exclusive of the approximately 25 acres tract of land conveyed by Arthur Christian and wife, Eliza Christian to Earl Christian, and exclusive of the colored school and church lot out of the Southwest corner, both of which were excepted from the Arthur Christian lease." "The South boundary line of said 31 acres shall be located by running a line parallel to the North boundary line of said 62 acres tract, located as aforesaid, and at such a distance to the South therefrom as to include 31 acres between said North and South boundary lines; the South boundary line of said 31 acres herein shall be coincident with the North boundary line of 31 acres of said lease assigned to Foree by Foster." (d) An assignment from Foster to East Texas Refining Company, dated April 10, 1931, in the same terms as that to Roeser, conveying 1/4 of Foster's interest. (e) An assignment, June 20, 1932, from Foster to Frank R. Foster, Inc., referring to the Christian-Skipper lease, recites that it covers "the following described lands in Gregg County being 82 acres more or less, known as the Arthur Christian Farm, in the Henry Hathaway survey". It further recites

"whereas the said lease and all rights thereunder are now owned by Foster, insofar as same covers an undivided 1/4 interest in and to the N 31 acres of the S 62 acres of the land covered by it." It sells his undivided 1/4 interest in the lease in so far as it covers the N 31 acres. There follows the same description of the N 31 acres as is contained in the Roeser assignment.

5 This release, dated April 19, 1934, from the plaintiffs to East Texas Oil Refining Company, refers to the Foster and Roeser contract of date January 24, 1931, the assignments made by Foster of all his interest in the N 1/2 of the S 62 acres, and a reservation of an oil payment therein, and recites that Foster had received full and final payment and releases the East Texas Oil Refining Company and its predecessors from all obligations under the contract.

6 "I have examined the field notes set out in an oil and gas lease dated April 28, 1930, recorded Vol. 4, Page 322 of the Oil and Gas Lease Records of Gregg County, Texas, from Arthur Christian and wife, Eliza Christian, Jack G. Leak, and W. C. Hurst to B. A. Skipper. I have calculated the area embraced within the description set out in said oil and gas lease and find the area to be 104.95 acres. The above mentioned lease contains a clause excepting '25 acres sold off of the N. W. corner to Earl Christian;' and if twenty-five acres be deducted from the acreage which I have calculated, there will be left 79.95 acres.

"I have examined the Deed to Earl Christian, which was referred to in the above mentioned oil and gas lease and which Deed was dated October 12, 1928, and recorded in Volume 60, Page 287, and I have also calculated the area embraced within the field notes of that Deed. Instead of being exactly 25 acres, there is 24.85 acres. If this amount be deducted from the total of 104.95, there will be left 80.10 acres of land."

ground contained, not 104.95 acres as plaintiffs' surveyor had computed it from its field notes, nor 107 acres as it recites was found by a recent survey, but 109.71 acres; that deducting from this amount, the 25 acre Earl Christian tract, leaves 84.71 acres; that when the two 31 acre and the 20 acre tracts assigned by Foster are deducted from this, there remains unconveyed, 2.71 acres; and that it is impossible to compute the actual area of a tract from the field notes of the instrument as plaintiffs' surveyor has done, without an actual survey on the ground.

Submitted on the motion for summary judgment there was a judgment for plaintiffs. Appellants here insist, first, that it was error to overrule their motion for misjoinder of parties, in that the pleading showed not that plaintiffs were jointly interested in the land sued for, but that each claimed an entirely different and segregated part, one the North, the other, the South, half of it. On the merits they urge that the surveyor's affidavit filed by defendants showing that after assigning the two 31 acre tracts and the 20 acre tract out of the Christian lease, there remained unassigned and belonging to Foster a tract of 2.71 acres lying between the 20 and the North 31 acre tracts, and plaintiffs not having contraverted this affidavit, defendants, not plaintiffs, should have had judgment, or at least the motion for summary judgment should have been denied and the cause set down for trial on the merits.

Appellees insist that the issue of misjoinder is determined against appellants by Rule 20(a), Rules of Civil Procedure, 28 U.S.C.A. following section 723c.[7] On the merits they urge that the affidavit of plaintiffs' surveyor raised no material issue of fact, because the controlling question in the construction of the instruments in question is not the number of acres actually included in the boundaries of the Christian lease, but the number of acres Foster, as assignor, thought were included in it. They insist that the instruments as a whole, in the light of the recitations in the assignments he made, that the tract had been recently surveyed and found to contain 107 acres; of

the fact that the assignments and the contract under which part of them were made were substantially contemporaneous; and the fact that for years during which plaintiffs have developed the land for oil as adjoiners, neither Foster nor appellees have claimed the existence of a strip or gore between them; furnish indisputable evidence of an intent on the part of Foster to pass all of his interests in the lease, and not as is now belatedly claimed, to reserve as a nuisance and menace to his grantees, a small narrow strip between the North and South tracts.

■ We agree with appellees. The question of joinder is purely one of procedure and is controlled by the federal rules. The Texas authorities appellants cite are without application. Rule 20(a) Permissive Joinder, in the largeness and comprehensiveness of its terms is peculiarly applicable here. Plaintiffs here, in the very terms of the rule, assert right to relief jointly and severally, or in the alternative, in respect of a series of transactions or occurrences and questions of law and of fact common to all of them arise in the action. It would be difficult to imagine a more apposite case.

■■ On the merits, the case is ruled by Texas decisions which have long established that in determining the scope and effect of a conveyance, there are no artificially controlling rules. The settled law here is that the intention of the parties as derived from the instruments, in the light of the circumstances under which they were executed and acted upon, is controlling and a presumption arises against the retention of gores or strips between tracts of land sold as a part of, and in the process of disposing of, a larger tract. If the assignment of the North 20 acres had contained a call for the South 62 acres or the assignment of its North 31 acres had called for the North 20 acres, it would of course be readily admitted that there was no intention to split them apart.

■ Appellants' whole case is based upon the contention that in the absence of

7 "(a) *Permissive Joinder.* All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. * * * A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

such a joining call, the only way the 20 acres can be laid off is by fixing its North line coincident with the North line of the lease and its South line at a point which would give 20 acres, neither more nor less. If the assignment to the 20 acres stood alone, if it were the only fact in the case, appellant would undoubtedly be right. But it by no means stands alone. It stands as one of a series of conveyances made at substantially the same time for the purpose of dividing the land into and selling it off as a North 20 and a South 62 acres, so as to dispose of all of it except the undivided interest retained by Foster in the North 31 acres. Standing then as one of a series of instruments so designed, no reasonable conclusion could be arrived at as to the intent and effect of the instruments as a whole, than that Foster, by selling the 20 as the North 20 and the 62 as the South 62, divided in turn into a North and South half, intended to divide his holdings into three tracts, by using North and South as the basis of the division, and as divided, to sell all that he owned in them, subject to an oil payment. The exact amount of acreage in the tract seems always to have been a little uncertain. Referred to throughout the lease as a 104 acre tract and, by calculation in accordance with the metes and bounds used in the lease, shown to contain 104.95 acres, stated in the lease to have been found by a recent survey to be 107 acres more or less, and now claimed by defendants to be 109 acres, these different estimates of acreage are important only for the light they throw upon the intention of the grantor to part with all or only a part of his holdings. The authorities not only in Texas but elsewhere strongly declare that where there has been a division of land into separate parcels, by partition or by deeds, or where there has been a conveyance of land adjoining, or abutting on, a right of way or easement, every presumption will be indulged against the intention to leave gores or strips between tracts so partitioned and conveyed. It is the law too that in the absence of clear and convincing evidence to the contrary, instruments effecting such division of a tract of land will be construed as intending to divide and as dividing the land into adjoining parcels and not as intending to leave such gores or strips between. Among the many authorities which may be cited to this point are: Beck v. Gulf Production Co., Tex.Civ.App., 113 S.W.2d 258; Rio Bravo Oil Co. v. Weed, 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391; Dawson v. Hickman, Tex.Civ.App., 95 S.W.2d 1319; Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912; Ford v. McRae, 128 Tex. 106, 96 S.W.2d 80; Woods v. Selby Oil & Gas Co., Tex.Com.App., 12 S.W.2d 994; Cf. Shell Petroleum Corp. v. Ward, 5 Cir., 100 F.2d 778.

Sun Oil Company v. Smith, Tex.Civ.App., 113 S.W.2d 683, cited by appellants was decided on facts having no remote resemblance to those at bar; and Zeppa v. Houston Oil Co. of Texas, Tex.Civ.App., 113 S. W.2d 612, on which appellants so strongly rely, does not, we think, at all present the point on which this case turns. There the instrument not only showed an intention to, but did actually, reserve a strip between the East 100 and the West 50 acres. The question there was not whether a strip would be found to exist, but whether the stated quantity of 18 acres would limit the strip to that amount in the face of a finding that there was more than 18 acres between the East 100 and West 50. The principle on which that case went off is without application here. There the question was merely as to whether the quantity stated to be in the strip should control elements in the description which seemed more significant, especially in view of the fact as found by the court that the parties to the instruments had given them a contrary construction. Here, what is contended for and what will not be permitted is the insertion of a strip between two tracts, contrary to the manifest intention of the parties, as shown both by the instruments themselves and by the uniform construction given to them by the parties, that the tracts conveyed did, and should, adjoin.

The judgment was right. It is affirmed.