**DENNIS et al. v. PACE PETROLEUM CO. et al.**

No. 15133.

Court of Civil Appeals of Texas. Fort Worth.

April 28, 1950.

Rehearing Denied June 9, 1950.

Ray Winder, of Gainesville, Carter & Gallagher, R. Guy Carter, and Ben T. Warder, Jr., all of Dallas, for appellants.

O. R. Tipps, of Wichita Falls, attorney for appellees, George L. Pace and Pace Petroleum Company.

Turner, Rodgers, Winn, Scurlock & Terry, and George S. Terry, all of Dallas, attorneys for appellee, Stanolind Oil Purchasing Company.

SPEER, Justice.

Appellants, Weldon Dennis, for himself and as administrator of the estate of H. L. Dennis, deceased, joined by more than fifty other Dennis heirs, instituted this suit against appellees, George L. Pace, Pace Petroleum Co., Stanolind Oil Purchasing Co., and First National Bank and Trust Co., the last three alleged to be corporations, in trespass to try title and for possession of 10.9 acres of land out of the Pope Survey in Cooke County, Texas, and for approximately $50,000, alleged to be the value of oil runs taken from the land.

For brevity we shall sometimes refer to Pace Petroleum Company as "Pace," and to Stanolind Oil Purchasing Co., as "Stanolind."

George L. Pace answered and disclaimed any interest in the subject matter of the suit and was discharged by the court. The remaining appellees answered generally and with pleas of not guilty and specially that "Pace" held a valid oil and gas lease on the land from appellants, had drilled two producing wells on the land and sold the oil to "Stanolind" and paid to appellants all royalties arising therefrom, and further plead that appellants had ratified and confirmed said lease in many enumerated ways and were estopped now to deny its validity.

Stanolind further filed a cross action over against Pace for any sum that appellants should recover against it. There are stipulations of facts in the record concerning previous liens held by the First National Bank and Trust Company on the Pace lease, which makes it unnecessary to make further reference to that original defendant.

Trial was to the court and judgment was entered to the effect that appellants take nothing as against appellees in so far as the $\frac{7}{8}$ths working interest in the land in controversy was concerned as covered by the oil and gas lease, and further denied a recovery by appellants for the value of alleged oil runs from the land. Hence this appeal.

The Pope survey, which contains the tract in controversy, was originally surveyed in 1856 and upon those field notes it was patented by the State in 1861. The original field notes showed the survey to be 1720 varas north and south and 700 varas east and west; its northeast and southeast corners are common with the northwest and southwest corners of the Ramey survey. At some early date O'Neal acquired 23 acres in the northwest corner of the Pope survey, and its southeast corner seems by the record to have had a definite and well defined location. The ancestors of appellants acquired title to all of the Pope survey except the O'Neal 23 acre tract. There are no findings of fact or conclusions of law by the court in the record.

Appellants' ancestors, acting through duly appointed administrators of the same estate, have executed oil and gas leases on the lands owned by them in the Pope survey. We shall later notice these leases. The lessees later assigned their respective lease contracts to others, but for clarity we think it best to refer to them in the names of the original lessees as all parties have done in their briefs before us.

Shortly prior to the filing of this suit appellants had all measurements of the Pope

survey checked by a survey on the ground and it was found by this surveyor to be 140 varas longer north and south than the original field notes called for, and by confining Pace to its calls of distances north and south leaves a strip of 140 varas wide between the Pace and the Grant leases, and this is the small tract of 10.9 acres in controversy.

Appellants rely upon sixteen points of error for reversal. Some are so closely related that they are briefed together. The first group of points one, two and three challenges the judgment denying a recovery of the $\frac{7}{8}$ths working interest claimed by Pace under its oil and gas lease, because: (1) The Pace lease is plain and unambiguous and when the field notes are traced on the survey they do not cover the land in controversy; (2) when the field notes of the last survey are followed the Pace lease does not include the tract in controversy; and (3) the evidence is insufficient to support the implied finding of the court that the last surveyor did not properly locate the southeast corner of the Pope survey.

The record in this case is very voluminous, there being more than six hundred pages of testimony and more than one hundred exhibits, some of which are large and complicated. The testimony as to the facts is very contradictory in many material respects. In cases tried to the court, as was this one, the court is the judge of the credibility of the witnesses and the weight to be given their testimony. If there is evidence of probative value to support the judgment it must be presumed that the court resolved the conflicts in such manner as to support the judgment entered and that if the judgment can be supported by any theory presented by the pleadings and testimony it will not be disturbed by the appellate court. These things are so elemental that they do not require citation of authorities.

Applicable to the points before us, it becomes our duty to view the whole record and in doing so we find that it does not necessarily follow that the court found the description in the Pace lease to be ambiguous and heard testimony to explain its contents; nor that the court found that the field notes in the lease covered the land in controversy; nor that the last surveyor did not properly locate the southeast corner of the Pope survey. Even if the court had found that the last surveyor properly located the southeast corner of the Pope survey, it would not preclude the judgment as entered if based upon another controlling factor in the case.

There are several theories prominently presented by appellees in several different ways in support of the judgment as entered. Broadly speaking these general theories are that the intentions of the parties as reflected by the several lease contracts indicate that appellants intended to and did lease all of their lands in the Pope survey, whether more or less as described by the field notes in their respective lease contracts.

Up to the time appellants had their lands surveyed, the original field notes of the Pope survey apparently had not been challenged for over ninety years. Appellants' ancestors had long been the fee owners of all of the Pope survey except 23 acres in the name of O'Neal. The length of the survey north and south was shown by the original field notes to be 1720 varas. The Pace lease in 1932 began its calls at the southeast corner of the survey and ran north 1261 varas. In 1942 some of the appellants leased a 59.2 acre tract to Beck and began the description at the southwest corner of the Pope survey and ran north 1261 varas to the southwest corner of the O'Neal 23 acre tract, thence east to the northwest corner of the Pace lease. In 1944 they leased 34 acres to Grant and began that description at the northeast corner of the Pope and ran south 459 varas, thence west to the southeast corner of the O'Neal 23 acre tract. Adding the east lines of the Grant and Pace leases, we have 1720 varas, the total length of the east line of the Pope survey as shown by its original field notes. We observe just here that in the Beck lease, measured from the southwest corner of the Pope, its west line ends at and adjoins the O'Neal tract and its northeast corner calls for the Pace northwest corner, thus giving the two leases the same

length north and south. Such joinder as that for the O'Neal tract will control over the distance calls in arriving at the intention of lessors. Ford v. McRae, 128 Tex. 106, 96 S.W.2d 80. This proposition is challenged in appellants' points four and five, but we think their contention not sound under the above authority.

■ What we have said above shows that appellants' every act in executing the leases tends to show their intent to lease all the land they owned in the Pope survey. Certainly they did not reserve any possible strip that might exist between the Grant and Pace leases if the survey happened to be longer than 1720 varas. Under all the circumstances we think the courts might well presume that appellants had no such intention to reserve from their leases the small controverted strip. Ford v. McRae, 128 Tex. 106, 96 S.W.2d 80; Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912; Doyle v. Stanolind Oil and Gas Co., 5 Cir., 123 F.2d 900, and cases there cited.

■ There are still further barriers between appellants and a recovery in this case. In the 34 acre Grant lease executed in 1944 under orders of the probate court, there is a provision which covers any possible excess or strip of land lying between the Grant and Pace leases, where appellants say this land is located. Immediately following the field notes, the Grant lease contains this paragraph: "Notwithstanding any particular description, it is nevertheless the intention of lessor to include within this lease, and he does hereby lease, not only the land so described but also any and all other land owned or claimed by lessor in the herein named survey or surveys, or in adjoining surveys, and adjoining the herein described land up to the boundaries of the abutting landowners." Similar provisions in leases have heretofore been construed to cover small excess acreage tracts in what purported to be adjoining leases. Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W. 2d 442, and Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447.

■ As just pointed out, it is quite clear from the cover-all clause in the Grant lease

appellants' ancestors parted with the 7/8ths working interest in any excess land that may have lain between the two leases and of course appellants thus failed to prove title in themselves to the 10.9 acre tract in controversy. Their action in trespass to try title thus failed. It is the generally accepted rule that in such cases plaintiffs must recover if at all upon the strength of their own title rather than the weakness of the title of their adversary. 41 Tex.Jur. 652, sec. 151.

■ Appellants challenge the validity of the cover-all clause in the Grant lease in point thirteen upon the basis that the quoted provision in the Grant lease was not authorized by the judgment of the probate court under which the lease contract was made by the administrator. The point cannot be sustained for two reasons: First, it is a collateral attack upon the judgment of the probate court entered at a time when the administration was duly and legally pending before the court; and second, the judgment on its face is regular in all respects and recites substantially that the court had inspected the proposed lease tendered with the application to the court for confirmation and found it correct and advantageous to the estate, and the testimony before us discloses that a copy of the proposed Grant lease was before the probate court and contained the cover-all provision above quoted by us. See Kreis v. Kreis, Tex.Civ.App., 36 S.W.2d 821, writ dismissed.

There is yet another theory in this case presented by the pleadings and the testimony abundantly sufficient to support the judgment entered upon the court's implied findings of fact. The testimony as disclosed by the statement of facts shows that shortly after the date of the Grant lease both he and Pace wanted to develop the area in the vicinity of what they thought was their dividing line, neither knew of the exact line. They each knew that applications to the Railroad Commission for permits to drill required a showing of distances from property lines. They both went upon the ground, accompanied by a surveyor, and agreed upon a boundary line between the two leases and thereupon had

the surveyor to make said agreed boundary line to extend due east from the southeast corner of the O'Neal 23 acre tract to a point on the east line of the Pope survey. Thereafter they each drilled wells on their respective leases with reference to the agreed boundary line. Pace drilled two wells, each of which was approximately 200 feet south of the agreed line between it and Grant and these wells are claimed by appellants to be on the small tract in controversy. Appellants own the royalty interest in each of the leases. It is clear to us that even if the Pope survey had been 140 varas longer than the original field notes called for, thus forcing an unleased strip between the two leases, the cover-all provision in the Grant lease dispossessed appellants thereof and that any such overplus was included in one or the other of the two leases; and observing the agreed boundary line between the two leases, it is quite obvious that Pace acquired it by the agreed line and both parties have subsequently acted thereupon, gone into possession and made valuable improvements on the land. See Gulf Oil Corp. v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711, and the many authorities therein cited.

■ Appellants challenge the applicability of the rule just announced to the case before us under its points eight, nine and fifteen. Their contentions are based largely upon their own testimony and construction of facts, about which the testimony is highly conflicting. There is an abundance of evidence in the record to support the implied findings of fact by the trial court that the dividing line was in dispute, its location unknown to the parties, and that they mutually agreed upon its location, as above pointed out. Hence, we think the points of error present no merit.

■ It is our conclusion from the record in this case that it is one of mixed law, facts and procedure. The interpretation of the written instruments was controlled by the applicable law and the disputed fact issues were for determination by the trial court. In the absence of findings of fact on disputed issues, it will be presumed by us that the court resolved the controverted questions of fact against the contentions of appellants. 3–B Tex.Jur. (Rev.) 376, sec. 913 and the many cases cited in the footnotes. As we have already observed, there are several theories raised by the appellees and supported by competent testimony which support the judgment entered. In such circumstances, as succinctly held in Johnson v. Archibald, 78 Tex. 96, 14 S.W. 266, 268, 22 Am.St.Rep. 27, "if the evidence is sufficient to support the judgment upon any defense presented in the case it is to be presumed that the court found in favor of the defendants upon that issue." That early case has been consistently followed. Rio Bravo Oil Co. v. Staley Oil Co., 138 Tex. 198, 158 S.W.2d 293.

In addition to the theories consistent with the judgment as entered and above pointed out, appellees relied upon several instances of estoppel. These theories are challenged by appellants in points six, seven, ten, eleven and fourteen. We have not discussed this phase of the case for the reason many elements enter into estoppel in its varying forms and would require a reproduction of much of the testimony extending this opinion to an unnecessary length. We therefore pretermit a discussion of these theories and points of assigned error and express no opinion thereon. A determination by us of whether appellants were estopped would not change the result of this appeal. Other controlling matters herein discussed have fully convinced us of the correctness of the conclusions finally reached.

Nor have we discussed the matter of a re-survey of the Pope survey made shortly prior to the filing of this suit. Doubtless that surveyor employed his best efforts in locating the corners of the survey but he confessedly failed to find the original markings or any of the corners or those points from which he surveyed and used as a basis for his final conclusion that the Pope survey was actually 140 varas longer north and south than the original field notes called for. He did find some passing calls of branches and "a ridge," said to be about 10 feet across its top. Under the circumstances of this case and the record before us, we think this surveyor's measurements

do not control over other matters and theories hereinbefore discussed.

Hazarding repetition, we must follow the universally accepted rule laid down and supported by the collated authorities in Ragsdale v. Dorbandt, Tex.Civ.App., 140 S.W.2d 219, 220, where it is held that when a case is tried to the court and no findings of fact or conclusions of law are filed, "if the judgment of the court below can be affirmed on any theory, it is our duty to do so," citing many authorities.

By their twelfth point of error appellants argue that because they were co-tenants with Grant in the oil and gas lease under the 34 acre tract, they could maintain this suit against Pace and others without joining Grant as a party. Under a proper factual situation the proposition is sound. Taylor v. Higgins Oil and Fuel Co., Tex. Civ.App., 2 S.W.2d 288, writ dismissed. The cited case is distinguishable from the one before us. There a royalty owner sued a trespasser for recovery of the land he had formerly leased to another. In the instant case to pursue the remedy contended for by appellants, they had to first admit that the "cover-all" provision in the Grant lease included the land they now say lay between the Grant and Pace leases, otherwise Grant would never have had any interest in it and therefore not a tenant in common. Then followed the dispute or uncertainty of the dividing line between Grant and Pace and the agreed boundary line acted upon by both. Such agreed line, as between the parties, meant that Grant owned all on one side of the line and Pace all on the other side. It thus follows that Grant had no interest in the land south of the agreed boundary line and could not have been interested with appellants in its recovery. Under these conditions appellants had no common interest with Grant in the 10.9 acres lying immediately south of the agreed boundary line.

Appellants' sixteenth point complains because the court denied them a recovery for oil runs taken by Pace from the land in controversy. The trial court properly denied appellants a recovery of the 7/8ths working interest in the Pace lease and of course Pace was not liable to appellants for its 7/8ths interest in the oil taken from the lease. The point is overruled.

Believing as we do that the record supports the judgment entered, points discussed by us are overruled and the judgment will be affirmed.

We note by the record certain royalty payments have been held up pending this suit and nothing we have said in this opinion shall be construed as denying appellants a right to these royalty funds being withheld. Royalties have been regularly tendered to and rejected by appellants. This item does not affect the taxing of the costs incurred in this case.

Affirmed.