# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00066-CV

**M. Lawrence Naumann and Naumann Farm, LLC, Appellants**

**v.**

**Edward R. Lee and wife, Josephine R. Lee; Edward J. Lee and wife Zenaida Lee; Robert D. Norris and wife, Dana K. Norris; Diana Toler and Von Toler, Appellees**

FROM THE DISTRICT COURT OF CALDWELL COUNTY, 207TH JUDICIAL DISTRICT
NO. 08-0-371, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

# M E M O R A N D U M   O P I N I O N

In this easement dispute, M. Lawrence Naumann and Naumann Farm, LLC, (sometimes jointly referred to as Naumann) appeal the trial court's summary judgment declaring that Naumann has only a limited easement to access only a portion of his property and that the easement purportedly granting Naumann the right to access the remainder of his property is invalid and does not burden appellees' property. The trial court denied Naumann's motion for summary judgment and granted appellees' cross motion. In five issues, Naumann complains that the trial court erred in denying his motion, granting appellees' motion, permanently enjoining his use of the easement except as to a portion of his property, and awarding attorney's fees to appellees. For the reasons that follow, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Naumann Farm owns real property in Caldwell County, conveyed to it by Naumann during the pendency of this litigation, that originally consisted of two tracts conveyed to Naumann by James Warren Gary and wife Dayle Gary (Gary).[1] One is a 265 acre tract that fronts on County Road 103 (the Gary tract). The second is a 1.992 acre tract carved from a larger tract that is adjacent to the 265 acre Gary tract and also fronts on County Road 103. The issue in this case is whether an easement granted to Gary by a prior owner of the 1.992 acre tract entitles Naumann, as successor in interest, to access the 265 acre Gary tract.

**Easement history**

In 1952, Cleo Jennings Heinen inherited a relatively long and narrow 259.9 acre tract bordered on the northeast by County Road 103 and on the southwest by the San Marcos River and bisected by Morrison Creek, a navigable waterway. In 1963, Heinen subdivided this "parent" tract into eight separately surveyed tracts, one of which was a fifty-foot wide, L-shaped tract comprising 5.175 acres that was laid out to provide access to the other seven tracts. Heinen simultaneously conveyed all eight tracts to the Veterans Land Board (VLB). The deed to the 5.175 acre tract contained no express reference to its use as an access easement to the other seven tracts. The deeds to the other seven tracts, however, contained language granting access over the 5.175 acre tract. The VLB immediately entered into seven contracts to sell the seven tracts to various third parties. Over the next twenty-eight years, upon completion of the contract terms, the VLB deeded the seven tracts

---

[1] The facts stated herein are taken from the record on appeal, including the summary judgment evidence.

to the purchasers or their successors. It is undisputed that the VLB never executed a contract for sale or deed conveying the 5.175 acre tract.

In the 1980s, Larry and Harriet Riddick (Riddick) began acquiring the seven VLB tracts from the various owners. By 1985 they had acquired six of the tracts, and in 1997 they acquired the seventh tract. Between 1984 and 1998, Riddick conveyed portions of the tracts, including conveyances to appellees. Each conveyance included the original access easement over the 5.175 acre tract created in the subdivision of the parent tract and one or more additional easements over portions of the other tracts, as needed, to provide access from County Road 103. These conveyances resulted in five easements, running for the most part along the southern boundaries of the two southernmost VLB tracts and then crossing Morrison Creek. At some point, Riddick constructed a fifty foot wide gravel road over the easements and a concrete crossing over Morrison Creek. This "Roadway Easement," consisting of the gravel road and the concrete crossing, provides the sole access to appellees' properties.

In 1984, Gary purchased the 265 acre Gary tract, which is adjacent to the two southernmost VLB tracts acquired by Riddick and therefore adjacent to the Roadway Easement. Like the parent tract to the VLB tracts, the Gary tract is relatively long and narrow, running from County Road 103 to the San Marcos River and bisected by Morrison Creek. The portion of the Gary tract between Morrison Creek and the San Marcos River cannot be reached directly from the remainder of the tract except by crossing Morrison Creek.

In June 1988, Gary entered into a two-part transaction with Riddick. As one part of the transaction, Gary purchased from Riddick a 1.992 acre tract carved out of one of the two

southernmost tracts acquired by Riddick.  This 1.992 acre tract lies between Morrison Creek and the San Marcos River, accessible by the concrete crossing, and provides a physical connection between the 265 acre Gary tract and the concrete crossing.  The deed to the 1.992 acre tract includes an easement over the 5.175 acre tract and other portions of the Roadway Easement, with the restriction that it be used only for access to the 1.992 acre tract.  As the second part of the transaction, Riddick simultaneously executed a Non-Exclusive Right-of-Way Easement (the 1988 Easement) granting Gary the right to access the 265 acre Gary tract by using the 5.175 acre tract and other portions of the Roadway Easement.  The intended purpose of the simultaneous purchase of the 1.992 acre tract and the 1988 Easement was to allow Gary access to his entire 265 acre tract, including the otherwise inaccessible portion lying between Morrison Creek and the San Marcos River by use of the concrete crossing over Morrison Creek and the 1.992 acre tract physically linking the otherwise separated portions of his 265 acre tract.

**Procedural history**

In 2005, Naumann purchased the Gary property, with the total acreage conveyed being 264.36 acres, which included the 1.992 acre tract.[2]  After the purchase, disputes arose between Naumann and appellees over Naumann's rights under the 1988 Easement.[3]  In 2008, Naumann filed suit against appellees seeking declaratory and injunctive relief regarding his right to use the Roadway Easement and attorney's fees and costs under the Uniform Declaratory Judgments Act (UDJA).  *See*

---

[2] The record is not clear as to the disposition of the remainder of the 265 acre tract, and its disposition is not relevant to this opinion.

[3] The parties do not dispute that the easement appurtenant to the conveyance of the 1.992 acre tract provides access only to the 1.992 acre tract.

Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). Appellees filed a counterclaim, also seeking declaratory and injunctive relief and attorney's fees and costs under the UDJA. *See id.* In addition, Norris filed tort and other counterclaims not involving the disputed easement. Naumann subsequently conveyed the property to Naumann Farm, his estate planning entity, which then intervened in the suit. The parties filed competing motions for partial summary judgment on the easement issue. The summary judgment evidence included the relevant contracts for sale, deed records, easements, illustrative drawings, and photographs. The trial court denied Naumann's motion, granted appellees' motion, and rendered a partial summary judgment declaring that no valid or lawful easement exists in favor of Naumann over the Roadway Easement except to access the 1.992 acre tract and that the 1988 Easement purporting to grant access to the 265 acre tract is invalid and does not burden appellees' properties. The trial court also permanently enjoined Naumann from using the Roadway Easement to access any property other than the 1.992 acre tract, conditioned on the judgment's becoming final.

On appellees' motion, the remaining counterclaims were severed into a separate cause, and a bench trial was held on their request for attorney's fees. The trial court rendered a final judgment incorporating the declaratory and injunctive relief granted in the partial summary judgment and awarding appellees attorney's fees in the amount of $84,760, with remittiturs of $37,500 and $10,000, respectively, if there was no appeal to this Court and to the supreme court. Naumann requested, and the trial court made, findings of fact and conclusions of law on the issue of attorney's fees. Naumann then filed a motion for new trial that was overruled by operation of law. This appeal followed.

# ANALYSIS

## Summary Judgment

### *Standard of Review*

We review declaratory judgments under the same standard as other judgments or decrees. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 2008); *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). Here, because the trial court rendered the declaratory judgment through summary judgment proceedings, "we review the propriety of the trial court's declarations under the same standards we apply to summary judgment." *See Hawkins*, 214 S.W.3d at 719. We review the trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003).

When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented and, if we determine that the trial court erred, render the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661 (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)). When the trial court does not specify the grounds on which the summary judgment was granted, we must affirm if any of the summary judgment grounds are meritorious. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004); *Knott*, 128 S.W.3d at 216. If we determine that a fact issue

6

precludes summary judgment for either party, we remand the cause for trial. *See University of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987) (per curiam).

Naumann's issues also involve matters of deed construction. A deed is subject to the same rules of interpretation and construction as a contract. *See Luckel v. White*, 819 S.W.2d 459, 461–62 (Tex. 1991). The construction of an unambiguous deed is a question of law, which we review de novo. *Id.* at 461. In conducting a de novo review, we exercise our own judgment and give no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999). The primary duty of a court when construing an unambiguous deed is to ascertain the parties' intent as expressed in the deed's four corners. *Luckel*, 819 S.W.2d at 461. In applying the "four corners" rule, we must not look at isolated terms but are to consider the instrument as a whole and attempt to harmonize and give effect to all provisions. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995). "We give the language its plain, grammatical meaning unless doing so would clearly defeat the parties' intentions." *Tana Oil & Gas Corp. v. Cernosek*, 188 S.W.3d 354, 359 (Tex. App.—Austin 2006, no pet.).

### Naumann's Ownership of the 5.575 Acre Easement Tract

In issues one through three, Naumann contends that the trial court erred in granting appellees' motion for summary judgment and denying Naumann's motion.[4] Appellees asserted five

---

[4] Although as a general rule the denial of a summary judgment is interlocutory and not appealable, *see Baker Hughes, Inc., v. Keco R. & D., Inc.*, 12 S.W.3d 1, 5 (Tex. 1999), the denial of Naumann's motion for summary judgment becomes reviewable on appeal by virtue of Naumann's complaint regarding the trial court's grant of summary judgment in favor of appellees. *See CU*

7

grounds in support of their motion for summary judgment, and on appeal Naumann challenges all five grounds. Because the trial court did not specify the grounds on which it granted appellees' motion, we must affirm if the summary judgment can be supported by any one of the five grounds asserted. *Patient Advocates*, 136 S.W.3d at 648; *Knott*, 128 S.W.3d at 216. We turn then to appellees' first ground because it is dispositive.

As their first ground in support of their motion for summary judgment, appellees argued that Riddick did not own fee title to the 5.175 acre tract and therefore could not as matter of law grant any easement over or across it as the 1988 Easement purported to do. It is axiomatic that a party cannot grant an easement over property it does not own, *see Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 202 (Tex. 1963), and Naumann does not contend that ownership was not required. Nor does Naumann dispute that the VLB never expressly conveyed the 5.175 acre tract by contract or deed. Rather, Naumann argues that Riddick acquired ownership of the 5.175 tract through the deeds to the adjoining VLB tracts under the "strip and gore" doctrine.

The strip and gore doctrine, based on a public policy of discouraging separate ownership of long narrow strips of land distinct from adjoining land, is a presumption that a deed conveys a small parcel of land omitted from the description of the land conveyed if the parcel (1) is small in comparison to the land conveyed, (2) is adjacent to or surrounded by the land conveyed, (3) belonged to the grantor at the time of the conveyance, and (4) was of no benefit or importance to the grantor. *Angelo v. Biscamp*, 441 S.W.2d 524, 526 (Tex. 1969) (citing *Cantley v. Gulf Prod. Co.*,

*Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998) (per curiam) (citing *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988)) (denial of summary judgment becomes reviewable when appellant complains regarding grant of summary judgment in favor of adversary).

8

143 S.W.2d 912, 915 (Tex. 1940) and *Strayhorn v. Jones*, 300 S.W.2d 623, 638 (Tex. 1957)); *Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 857 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); *Anderson v. Shaw*, No. 03-08-00352-CV, 2010 Tex. App. LEXIS 4578, at *20 (Tex. App.—Austin June 18, 2010, no pet.) (mem. op.); *Hopkins v. State*, No. 03-07-00253-CV, 2009 Tex. App. LEXIS 8780, at *15 (Tex. App.—Austin Nov. 13, 2009, no pet.) (mem. op.). When these conditions are met, and in the absence of plain and specific language in the deed indicating that the grantor intended to reserve the strip, it is presumed that the grantor intended to convey it. *Cantley*, 143 S.W.2d at 915; *Hopkins*, 2009 Tex. App. LEXIS 8780, at *16.

The presumption, however, is a rule of construction that applies only when there is ambiguity as to the land intended to be conveyed, whether the ambiguity is found in the deed itself or arises from an attempt to apply the property description on the ground. *McKee v. Stewart*, 162 S.W.2d 948, 950 (Tex. 1942) (citations omitted) ("If there is no ambiguity there is no occasion for construction, and the description speaks for itself."); *Woolaver v. Texaco, Inc.*, 594 S.W.2d 224 (Tex. Civ. App.—Fort Worth 1980, writ ref'd n.r.e.); *Anderson*, 2010 Tex. App. LEXIS 4578, at *20; *Hopkins*, 2009 Tex. App. LEXIS 8780, at *16. The presumption does not apply when the grantor plainly and specifically reserves the parcel. *Angelo*, 441 S.W.2d at 526; *Anderson*, 2010 Tex. App. LEXIS 4578, at *20.

Naumann argues that, although there was no separate deed conveying the 5.175 acre tract, by application of the strip and gore doctrine, Riddick acquired fee title to it through the deeds conveying the adjoining VLB tracts. Naumann asserts that there is no language in the deeds from the VLB or the later deeds suggesting any intention to exclude or reserve the 5.175 acre tract. To

9

the contrary, Naumann contends, the language of the deeds from the VLB expressed the VLB's clear intent to include the 5.175 acre tract in the conveyances. In support of this reading of the deeds, Naumann relies on the following provision:

> Together with the unrestricted right and privilege of traveling on, over, and across, and *subject to*, that certain access easement consisting of 5.175 acres of land situated in Caldwell County, Texas [metes and bounds description follows] (emphasis added).

Naumann argues that the only reasonable construction of the "subject to" language in this provision is that these instruments conveyed both the specific tracts described and the adjoining portions of the 5.175 acre tract. Thus, Naumann argues, Riddick, as successor in interest, acquired fee title in the 5.175 acre tract and could subsequently grant an access easement over it. Appellees, on the other hand, contend that the VLB deeds unambiguously show that the VLB intended to reserve the 5.175 acre tract as a legally separate parcel by granting an easement over the tract and therefore expressly disavowing a conveyance in fee simple. They argue that the "subject to" language relied on by Naumann defines and limits the estate conveyed but does not create additional rights. Thus, neither party contends that the deeds are ambiguous on their faces, yet they advance conflicting interpretations of the deed language.

After reviewing the deeds and applying the rules of construction, we agree that the deeds are not facially ambiguous and conclude that they clearly express an intent by the VLB not to convey the 5.175 acre tract.[5] The deed language precisely describes the locations of the boundaries

---

[5] *See Columbia Gas Transmission Corp. v. New Ulm Gas Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) ("[A]mbiguity does not arise simply because the parties advance conflicting interpretations of the contract.").

10

of the adjacent VLB tracts as running up to and along the 5.175 acre tract, showing a clear intent not to include the separately surveyed 5.175 acre tract. *See McKee*, 162 S.W.2d at 950; *Hopkins*, 2009 Tex. App. LEXIS 8780, at *16 (location of boundary precisely described to exclude strip and description showed intent not to convey strip). Further, the deeds and/or contracts of sale to the VLB tracts contain an express easement over the 5.175 acre tract, which is contrary to an intent to convey the 5.175 acre tract in fee simple.[6]

We further conclude that the "subject to" language does not alter the meaning of the clear property descriptions and easement language. The "subject to" language first appeared in the deeds to the VLB, at which time the 5.175 acre tract was also conveyed—separately. The term "subject to" is used to define the estate conveyed and its nature, extent, and character but creates no affirmative rights. *Cockrell v. Texas Gulf Sulphur Co.*, 299 S.W.2d 672, 676 (Tex. 1956); *Schlapper v. Forest*, No. 03-06-00315-CV, 2010 Tex. App. LEXIS 7037, at *19 (Tex. App.—Austin Aug. 24, 2010, pet. denied) (mem. op.). It implies a limitation and "should not be interpreted to give a grantee

---

[6] In a footnote, Naumann notes that the contract for sale and deed for one of the tracts at issue, from which the Norris and Toler tracts were carved, did not contain the easement language contained in the other six conveyances. As a result, Naumann argues, if appellees are correct that Riddick did not have title to the 5.175 acre tract and could not convey an easement over it, then Norris and Toler have no valid easements because they too would be dependent on later grants by Riddick. However, all eight deeds to the VLB were made the same day and constituted a total disposition of the parent tract. Similarly, all of the VLB contracts for sale were executed on the same day. A series of instruments proximate in time and subject matter are construed together to ascertain intent of the grantor. *See Terrell v. Graham*, 576 S.W.2d 610, 612 (Tex. 1979); *Jones v. Fuller*, 856 S.W.2d 597, 601 (Tex. App.—Waco 1993, writ denied) (where father simultaneously deeded tracts containing easements to children and omitted easement from one deed, court construed all deeds together and held deed omitting easement language contained grant of easement as a matter of law). We conclude, and Naumann does not appear to dispute, that the easement over the 5.175 acre tract was appurtenant to all of the seven tracts.

rights in addition to an already stated scope of conveyance." *Smith v. Huston*, 251 S.W.3d 808, 823 (Tex. App.—Fort Worth 2008, pet. denied).

Applying the plain meaning of the term, and construing the deeds as a whole, we conclude that the term "subject to" merely provided notice to the grantees of each tract regarding the easement rights appurtenant to the other tracts and does not indicate that the VLB conveyed its fee simple interest in the 5.175 acre tract. *See Plainsman Trading Co.*, 898 S.W.2d at 789; *Cernosek*, 188 S.W.3d at 359; *Texas Indep. Exploration, Ltd. v. Peoples Energy Prod.-Tex., L.P.*, No. 04-07-00778-CV, 2009 Tex. App. LEXIS 6941, at *15 (Tex. App.—San Antonio Aug. 31, 2009, no pet.) (mem. op.) (conveying land "subject to" defined interests is merely means of providing notice of outstanding interests that may affect grantee's title). Thus, the deeds themselves evidence the VLB's clear intent not to convey and therefore to reserve the 5.175 acre tract as a separate parcel. *See McKee*, 162 S.W.2d at 950; *Schlapper*, 2010 Tex. App. LEXIS 7037, at *19; *Hopkins*, 2009 Tex. App. LEXIS 8780, at *16.

Naumann contends that although the deeds are not ambiguous on their faces, ambiguity arises when the description of the property conveyed is applied to the ground. Naumann appears to argue that a grantor's conveyance of property omitting a narrow strip that is of no remaining use to the grantor, in and of itself, creates ambiguity in applying the property description to the ground. We find this argument unpersuasive. There must be ambiguity *in the deed or its application* for the presumption to apply to a conveyance that omits a strip of property that is no longer of use to the grantor; the mere omission of the strip no longer needed does not create ambiguity. *See Woolaver*, 594 S.W.2d at 225; *Hopkins*, 2009 Tex. App. LEXIS 8780, at *16. Stated

another way, the presumption applies only when a strip that has ceased to be of use is omitted *and* there is ambiguity with regard to whether the deed conveys the strip at issue. *Compare McKee*, 162 S.W.2d at 950 (no ambiguity where property description clearly excluded strip at issue), *with Shell Petroleum Corp. v. Landers*, 107 S.W.2d 509, 511–12 (Tex. Civ. App.—Eastland 1937, writ ref'd n.r.e.) (ambiguity arose when field notes were applied to ground).

Here, as we have stated, the property boundaries are precisely described, clearly fitting the specific tracts conveyed up to and along the boundary of the separate 5.175 acre tract, over which a specifically described easement is conveyed, and there is no evidence of ambiguity in applying the descriptions to the ground. The granting language plainly and specifically conveys only easement rights over the 5.175 acre tract and thus clearly does not convey the tract in fee simple. *See Angelo*, 441 S.W.2d at 526; *Anderson*, 2010 Tex. App. LEXIS 4578, at *20. We conclude that there is no ambiguity in the deed descriptions or in their application to the ground regarding whether the VLB intended to reserve the 5.175 acre tract so as to trigger the application of the strip and gore doctrine. *See McKee*, 162 S.W.2d at 950; *Woolaver*, 594 S.W.2d at 225; *Hopkins*, 2009 Tex. App. LEXIS 8780, at *16.

Even if we were to find ambiguity in the deeds or their application, we would nevertheless conclude that the strip and gore doctrine does not apply in this case. For the presumption to apply, the omitted strip must no longer be of use to the grantor. *Angelo*, 441 S.W.2d at 526–27; *Alkas*, 672 S.W.2d at 857; *Hopkins*, 2009 Tex. App. LEXIS 8780, at *15. Naumann argues that once the VLB conveyed the seven tracts to the purchasers, it owned no remaining adjoining property and thus had no use for the 5.175 acre tract and no plausible reason to retain it.

13

However, the summary judgment evidence shows that the 5.175 acre tract had not ceased to be of use to the VLB at the time it conveyed the first two tracts, the tracts over which Riddick constructed the majority of the gravel road and the concrete crossing, or Roadway Easement, at issue. At that time, the VLB still owned five of the seven original tracts and continued to own one tract until at least 1991. The contracts for sale on those tracts had not been paid off, and the VLB needed to retain ownership of the 5.175 acre tract to convey access to these remaining tracts when it later deeded these tracts to the purchasers. It cannot be said that there was no plausible reason for the VLB to reserve the 5.175 acre tract. *See Cantley*, 143 S.W.2d at 915.

In addition, Naumann has cited no cases, and we have found none, in which the courts apply the strip and gore doctrine to a parcel that has been conveyed as a separate tract. The presumption of conveyance applies to parcels that have been omitted from the property descriptions in the deeds in question. *See Cantley*, 143 S.W.2d at 913–14 (no reference to road reservation adjacent to lot and acquired by lot owner by adverse possession); *Alkas*, 672 S.W.2d at 855–56 (after consolidation of several commercial tracts, two portions, previously included in loan security, omitted from field notes in deed of trust for loan consolidation); *Anderson*, 2010 Tex. App. LEXIS 4578, at *20 (two triangular-shaped parcels omitted from field notes in deed). Here, the 5.175 acre tract was not omitted from the deeds of the specific tracts. Rather, having been the subject of a separate deed in the prior subdivision creating those tracts, it was expressly identified in the deeds and designated as a boundary for and an easement appurtenant to those tracts.

14

Naumann relies heavily on *Cantley* and contends that it is controlling authority in this case. In *Cantley*, the strip in controversy was created as a "road reservation" between two lots in a partition proceeding but was not the subject of a separate deed. 143 S.W.2d at 913–14. The strip was never used as a roadway; instead, the owner of one of the adjoining lots fenced the strip and cultivated it, acquiring title by adverse possession, and built a road over the adjoining lot. *Id.* at 914. In a subsequent sale, the deed omitted any reference to the strip. *Id.* In holding that the owner intended to include the strip in the conveyance, the court noted that he surrendered possession of both the lot and the adjoining strip and that there was nothing in the record to show that it was of any benefit to him or that there was any reason for him to reserve it at the time the conveyance was made. *Id.* at 915. In this case, the 5.175 acre tract was not omitted from the deeds but was conveyed as an easement appurtenant in the deeds, which precisely described the boundaries of the specific tracts conveyed as running up to and along the boundary of the 5.175 acre tract, which had been previously conveyed by separate deed. There is no evidence that VLB ever surrendered possession of the 5.175 acre tract, and the record shows that it had reason to reserve it at the time of the conveyance of the other relevant tracts. We conclude that *Cantley* is distinguishable and is not controlling authority here.

Because we conclude that the deeds are not facially ambiguous but show the clear intent of the VLB to retain the 5.175 acre tract, that no ambiguity arises in applying the property descriptions to the ground, that the "subject to" language creates no additional affirmative rights in the grantees, and that the 5.175 acre tract had not ceased to be of use to the VLB, the strip and gore doctrine does not supply a presumption that the VLB intended to convey the 5.175 acre tract in fee

15

simple to Riddick. Naumann's claim to ownership through the application of the strip and gore doctrine therefore fails as a matter of law, and the trial court did not err in granting summary judgment in favor of appellees on this ground. Because we find this ground to be meritorious, we need not reach Naumann's arguments on the other grounds asserted by appellees in their motion for summary judgment. *See* Tex. R. App. P. 47.1; *Patient Advocates*, 136 S.W.3d at 648. We overrule issues one through three.

**Injunctive Relief**

In issue four, Naumann complains of the trial court's issuance of a permanent injunction prohibiting Naumann from using the Roadway Easement to access any portion of the Naumann property except the 1.992 acre tract and contends that the injunction must be dissolved. We review the granting or denial of a permanent injunction for an abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

Naumann first argues that the trial court abused its discretion in ordering a permanent injunction because it was based on the trial court's erroneous granting of declaratory relief in favor of appellees. Given our conclusion that the trial court did not err in its declaratory summary judgment, we cannot conclude that the trial court abused its discretion in granting a permanent injunction on this ground. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52. Naumann further challenges the permanent injunction on the ground that there was no evidence that Naumann would not

16

voluntarily abide by a final declaratory judgment. In general, a permanent injunction must not grant relief that is more restrictive or comprehensive than justified by the pleadings, evidence, and principles of equity and must be narrowly and precisely drawn. *Holubec v. Brandenberger*, 111 S.W.3d 32, 39–40 (Tex. 2003). Here, the undisputed summary judgment evidence showed that on multiple occasions Naumann had used the Roadway Easement to access the 265 acre Gary tract with construction vehicles and equipment weighing in excess of two tons. The 1988 Easement is expressly limited to vehicles "not to exceed two-ton trucks." In light of the evidence that Naumann had previously used the 1988 Easement in violation of its express terms, we cannot conclude that the trial court abused its discretion in entering a narrow and precisely worded permanent injunction enjoining Naumann from any future use of the 1988 Easement to access the 265 acre Gary tract. *See id*; *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. We overrule Naumann's fourth issue.

**Attorney's Fees**

In issue five, Naumann argues that the trial court abused it discretion in awarding attorney's fees to appellees under the UDJA. Naumann challenges the trial court's finding that there were "special and particular circumstances [in the case] that warranted the award of attorney's fees" to appellees. Naumann complains that the trial court did not specify what those circumstances were, other than its finding that the case involved "complex issues of law and fact," and disputes that the record supports the conclusion that the case was, in fact, complex. Naumann further contends that because the evidence was insufficient to support these findings and the award of attorney's fees, the trial court actually based its award on its erroneous decision that made appellees the prevailing party.

17

The UDJA does not require an award of attorney's fees to the prevailing party; rather, the statute provides that the trial court "may award . . . reasonable and necessary attorney's fees as are equitable and just" and may award fees to the prevailing party, the nonprevailing party, or neither. Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex. 1996) (award of attorney's fees under UDJA not dependent on finding that party "substantially prevailed"). Courts must make a factual determination regarding the reasonableness and necessity of the fees awarded and a legal determination as to whether the award is equitable and just. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 556 (Tex. App.—Austin 1999, pet. denied). We review the award of attorney's fees under the UDJA for an abuse of discretion. *Bocquet*, 972 S.W.2d at 20–21. The trial court abuses its discretion when there is factually insufficient evidence that the fees awarded were reasonable and necessary, which are questions of fact, or when the fee award is inequitable or unjust, which are matters of law. *Id.* at 21.

In conducting a factual sufficiency review, we must weigh all the evidence in the record and may overturn the trial court's findings only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). The factors that guide the determination of reasonableness and necessity are (1) the time and labor required to perform the legal services; (2) the likelihood that acceptance of the case would preclude the attorney from taking other employment; (3) the fee customarily charged in the area for similar services; (4) the amount involved and the result obtained; (5) the time limitations imposed

18

by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Bocquet*, 972 S.W.2d at 21 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting Tex. Disciplinary Rules Prof'l Conduct 1.04(b), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G app. A (West Supp. 2011) (Tex. State Bar R. Art. X, § 9))). The appellate court must "detail all relevant evidence and explain why the evidence was factually insufficient." *Id.* (citing *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 848 (Tex. 1990), *superseded on other grounds by statute*, Tex. Civ. Prac. & Rem. Code Ann §§ 71.002, .021 (West 2008)).

We turn, then, to the record to apply these factors to the evidence. Although this case was decided on summary judgment, the clerk's record is three volumes. It reflects that the parties' competing motions for summary judgment and responses involved detailed explanations of a long and complicated fact pattern and numerous exhibits, including contracts, deeds, affidavits with additional attachments, aerial photographs, and drawings. Similarly, the reporter's record, although consisting of the transcript of a single-issue trial, is two volumes (in addition to the master volume), with one devoted entirely to exhibits. At trial, both appellees' attorney and an independent attorney appearing as an expert witness testified regarding attorney's fees. Both testified that they are board certified in farm and ranch real estate law. They also testified about the detail and complexity of the facts and issues, calling some of them "novel," and stated that a case such as this precludes an attorney from taking on other cases of similar complexity.

19

Appellees' attorney testified as to the specific services he provided, including "a great deal of research," on-site inspections, preparation of pleadings, a mediation, and a trip to Corpus Christi for depositions scheduled by Naumann. He stated that he had spent 125.5 hours on the case at $250.00 an hour, the civil trial lawyer he had consulted on civil procedure had spent 22 hours at $250.00 an hour, and his associate attorney had spent 14 hours at $140 an hour, and that after segregating the fees due only on the matters before the court, the total was $37,260.00. He estimated that should the case be appealed, his fees would be $37,500.00 and $10,000.00 to this Court and the supreme court, respectively. Both attorney witnesses stated that they are familiar with the customary rates in the area, that the work performed was necessary and the fees charged were reasonable, and that the estimated fees on appeal were reasonable and necessary.

The testimony elicited from these witnesses by Naumann included that the litigation had been amicable and efficient, the parties had exchanged documents without formal discovery, there had been only one deposition, and the witness Naumann deposed in Corpus Christi was beyond subpoena range. Naumann offered no testimony to counter that of the two attorneys who testified in support of the fee award.

Although the record does not contain evidence of every factor under Rule 1.04, we conclude that there was factually sufficient evidence to support the trial court's finding that the fees were reasonable and necessary and cannot say that the trial court's award was so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Id.*; *Cain*, 709 S.W.2d at 176; *Herring*, 21 S.W.3d at 368–71 (affirming on remand trial court's award of attorney's fees even though evidence was not present on every factor); *Davis v. Weatherston*,

No. 04-00-00533-CV, 2002 Tex. App. LEXIS 3194, at *23 (Tex. App.—San Antonio May 8, 2002, no pet.) (following *Herring* and finding no abuse of discretion despite lack of evidence on all factors). Further, to the extent that Naumann challenges the fee award as inequitable or unjust on the ground that it was based on the trial court's erroneous decision on the merits, we have already concluded that the trial court did not err in granting declaratory and injunctive relief. The decision to award attorney's fees is solely within the trial court's discretion. *Bocquet*, 972 S.W.2d at 21. As we stated earlier, the trial court may exercise its discretion to award attorneys's fees to the prevailing party, the nonprevailing party, or neither. *See* Tex. Civ. & Prac. Rem. Code Ann § 37.009; *Barshop*, 925 S.W.2d at 637–38. On the record before us, we cannot conclude that the trial court abused its discretion in its award of attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Bocquet*, 972 S.W.2d at 21; *Stable Energy*, 999 S.W.2d at 556. We overrule Naumann's fourth issue.

## CONCLUSION

Having overruled Naumann's issues, we affirm the trial court's judgment.[7]

_____

Melissa Goodwin, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: April 5, 2012

_____

[7] Appellants and appellees have both filed motions for leave to file post-submission briefs, which are pending before this Court. We grant these motions.

21